## JAMES A. PARKES v. W. CLIFT et al.

1. ESTOPPEL. *Judgment.* The estoppel of a judgment or decree extends to all matters material to the decision of the cause which the parties, exercising reasonable diligence, might have brought forward at the time.

2. RES ADJUDICATA. *Judgment.* A judgment or decree to be a bar as *res adjudicata* must be in the merits, but to this end it is not necessary that the litigation should be determined on the merits in the moral or abstract sense of these words; it is sufficient that the *status* of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases.

3. SAME. *Demurrer.* A decree dismissing a bill upon demurrer, on the ground of lapse of time or laches, is on the merits, and a bar to another suit between the same parties or their privies, about the same subject-matter, and for the same purpose.

4. LIMITATIONS OF ACTIONS. *Code 2755 construed.* The Code, sec. 2755, which authorizes a plaintiff to commence a new action within one year after the rendition, in a suit commenced by him within the time limited by the statute of limitations, of a judgment or decree against him "upon any ground not concluding his right of action," does not apply when the judgment or decree is on the merits.

5. LIMITATIONS. *Statute of.* In a suit by heirs to recover lands descended from an ancestor, and for this purpose to set aside a judgment against the ancestor, as void for want of notice or fraud, and a sale of the lands made under the judgment during the life of the ancestor, the time of limitations or laches would begin to run against the ancestor.

FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

BARTON & SON and L. D. HEADRICK for complainant.

Parkes *v.* Clift.

RICHMOND & KEY and M. H. CLIFT for defendants.

COOPER, J., delivered the opinion of the court.

On May 15, 1854, Robert Lusk recovered a judgment in the circuit court of Davidson county, against Thomas Parkes for $1720. The entry shows that the judgment was by default upon an acknowledgment of service of the summons, and that the acknowledgment was proved by R. C. Foster, Esq. On the 1st of July, 1854, a *fieri facias* issued on this judgment to Davidson county, and was returned "no property found." On September 12, 1854, an *alias fi. fa.* issued to Hamilton county, and was levied by the sheriff on several thousand acres of land as the property of Parkes. On January 10, 1855, the sheriff, by virtue of the levy, sold the land to the judgment creditor, Robert Lusk, for less than the amount of the judgment, and made him deeds accordingly, which were duly registered. In the month of October, 1855, Thomas Parkes died intestate in Hardin county, leaving three children as his only heirs, W. J. Parkes, then about seventeen years of age, Thomas Parkes, about fifteen years of age, and the complainant, James A. Parkes, then twelve or eighteen months old. The deceased left also a widow. Administration was taken out on his estate shortly after his death.

On April 25, 1876, W. J. Parkes, Thomas Parkes and James A. Parkes, filed their bill in the chancery court of Hamilton county, as the children and heirs of Thomas Parkes, the intestate, against Wm. Clift, of Hamilton county, Matilda Lusk, as executrix of the last will of Robert Lusk, deceased, and E. G. Pearl,

individually and as executor of the last will of Dyer Pearl, deceased, setting up title to the lands sold by the sheriff as aforesaid, and seeking to remove as clouds upon their title, the conveyances under which the defendants claim. The complainants say that they were ignorant their father owned these lands until 1876, when Thomas Parkes, while investigating the title of certain lands in Hamilton county, which had descended to them from an uncle, unexpectedly found the sheriff's deed. It was further found that on April 11, 1865, Robert Lusk and the defendant, E. G. Pearl, in his own right and as executor of the last will of Dyer Pearl, his deceased father, each as the owner of an undivided moiety of the lands in controversy, joined in conveying to the defendant Clift an undivided fourth of said lands, and to R. C. McRee, another fourth, and that on March 27, 1873, McRee sold and conveyed to defendant Clift his interest in the lands. The bill set out the facts as to the judgment, execution, levy and sale, and sought to have the same declared void. The defendants demurred to the bill, and the demurrer, although overruled by the chancellor, was, upon appeal, sustained by this court at the September term, 1879, and the bill dismissed.

On March 29, 1880, James A. Parkes filed the present bill against the same parties and for the same purpose. He states the fact of the filing of the previous bill by himself and brothers, and what was done with it as above. He sets out the facts of the case as therein recited, and adds other facts tending to show that the debt on which the judgment was recovered

had been paid, and that the judgment was void for want of service of process, and because fraudulently procured to be rendered. He further alleged that the complainant's brothers had gone into bankruptcy, and that their interests in the land had been sold by their respective assignees, the interest of the one in 1876 and of the other in 1878, and that complainant had become the purchaser. By an amended bill it is stated that the papers in the suit of Lusk against Parkes, had been found by some one since the filing of the complainant's original bill, and it now appeared that the acknowledgment of service of the summons purported to be signed by Thomas Parkes himself on February 16, 1854, the day the suit was commenced; that complainant had caused the signature to be submitted to persons acquainted with the handwriting of Thomas Parkes, and, on information derived from them, complainant charged that the signature was not his. In this amended bill, there are some additional averments of facts tending to show that the debt sued on had been paid in 1853. The defendants demurred to the bill as amended, assigning as one cause of demurrer that it showed upon its face a former adjudication, which was a bar to the present action. The chancellor overruled the demurrer and the defendants appealed.

The bill as drafted leaves it uncertain what part of the facts detailed in it were not contained in the former bill of the 25th of April, 1876. There is a general statement that the facts have all come to the knowledge of complainant and his brothers since Jan-

uary, 1876, and many of them since April 25, 1876. And those facts which seem to have come to the knowledge of the complainant since the dismissal of the former bill, are obviously such as could have been discovered sooner by reasonable diligence, for the same sources of information existed in 1876 as in 1880. The complainant being a purchaser pending the former suit of the interests or shares of his brothers in the land in controversy, the present suit is between the same parties or their privies as the former suit, is about the same subject-matter, the lands in Hamilton county, and for the same purpose, to remove the cloud from the title set up created by the judgment against the father, and the sales thereunder. It was the duty of the complainant to present his whole case in the former suit. According to the strict English chancery practice, he could not, pending the suit, have been permitted to bring forward, by way of amendment, facts in his knowledge at the filing of the bill. And we have repeatedly held that after the dismissal of a bill in this court upon demurrer, the cause would not be remanded for the purpose of amending the bill by the insertion of such matter: *McEwen* v. *Gillespie*, 3 Lea, 204; *Fogg* v. *Union Bank*, 4 Baxt., 539; *Puckett* v. *Richardson*, 6 Lea, 64. A new bill will not, of course, lie in such a case, for the estoppel of a judgment or decree extends to all matters material to the decision of the cause which the parties, exercising reasonable diligence, might have brought forward at the time: *Thomson* v. *Blanchard*, 2 Lea, 528; *Peeler* v. *Norris*, 4 Yer., 331; *Welch* v. *Harmon*, 8 Yer., 103;

*Aurora City* v. *West*, 7 Wall., 102; *Stout* v. *Lye*, 103 U. S., 66; *Knight* v. *Atkisson*, 2 Tenn. Ch., 384. If after a decree a bill would lie to retry the cause merely because error has supervened, the facts been misapprehended, or the party had neglected his case, there would be no end to litigation: *Hudson* v. *Caldwell*, 1 Lea, 50.

A judgment or decree to be a bar must be on the merits: *Hurst* v. *Means*, 2 Sneed, 546; *Mabry* v. *Churchwell*, 1 Lea, 416. And a decree dismissing a bill upon demurrer may be upon the merits, in which case it is as conclusive as if the facts set forth in the bill were admitted by the parties, or established by evidence: *Murdock* v. *Gaskill*, 8 Baxt., 22; *Grotenkemper* v. *Carver*, 4 Lea, 375. The decree relied on as an estoppel in the case before us has all the elements of an estoppel, being a general dismissal of a bill between, as we have seen, the same parties, touching the same subject matter, and for the same purpose. And the question may, of course, be raised by a demurrer if the facts sufficiently appear on the face of the bill.

These principles are conceded by the eminent counsel who argued this case on behalf of the complainant. He rested the right of his client to relief upon the provisions of the Code, sec. 2755: "If the action is commenced within the time limited [by the statue of limitations], but the judgment or decree is rendered against the plaintiff upon any ground not concluding his right of action, or where the judgment or decree is rendered in favor of the plaintiff, and is arrested,

34—VOL. 9.

or reversed on appeal, the plaintiff, or his representatives and privies, as the case may be, may, from time to time, commence a new action within one year after the reversal or arrest." This section of the Code has been held to enlarge the remedy of the old statutes embodied in it, and to extend to a case where a suit was dismissed because the papers were lost and not supplied when the case was called for trial: *Cole* v. *Mayor, etc., of Nashville,* 5 Cold., 639. And to a dismissal by the plaintiff taking a voluntary nonsuit: *Memphis & Charleston R. R. Co.* v. *Pillow,* 9 Heis., 248. The argument in the suit before us is that the action was commenced within one year of the dismissal of the former bill, and that the dismissal was upon a ground not concluding the complainant's right of action.

The argument is based upon the fact, alleged in the bill, that the opinion of the court delivered in the former suit showed that the bill was 'dismissed upon the ground of lapse of time, " there being," says the opinion, " no excuse whatever given for failure to sue in a reasonable time—no allegation of infancy, or fraudulent concealment of, or even ignorance of their rights on the part of the complainants." The opinion adds: " We adjudge nothing as to the legal rights of complainants, only that from lapse of time a court of equity will not entertain a bill on its allegations." Perhaps it would be a sufficient answer to the argument to say that the dismissal, as the bill shows, was general, without reservation, and that, even if the opinion might authorize the court to modify the decree

under the statute, it is conclusive on the rights of the parties as it now stands.

The section of the Code relied on, it will be no-ticed, only saves the bar of the statutes of limitation in the particular case provided for.   The dismissal in question, according to the bill, was upon the ground of lapse of time, that is the laches of the complain-ants in not having brought their suit in a reasonable time after the accrual of their right of action.   Laches is an equitable defense independent of the statute of limitations: *Smith* v. *Clay*, Amb., 645.   But the sec-tion of the Code relied on does not, in terms, apply to a case of laches within the rule of a court of equity.   It was only intended to save the bar of the statute of limitations in the cases specified.   It would not otherwise change the effect of a former judgment or decree as *res adjudicata.*

What, then, is the effect of the former decree, con-ceding it to be, as stated in the bill, a decree, upon demurrer, dismissing the bill "alone upon the ground of lapse of time"?   Would such a decree be upon the merits, and, therefore, necessarily concluding rights?   In order that a judgment or decree should be on the merits, it is not necessary that the litigation should be determined "on the merits," in the moral or abstract sense of these words.   It is sufficient that the *status* of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases.   The decision may be clearly wrong, or may be against the losing party because he offered in evidence a valid

record or deed with a defective certificate, or otherwise failed to present his case as the facts within his knowledge, or obtainable by reasonable diligence, would have enabled him to do: *Thomson* v. *Blanchard*, 2 Lea, 528; *Nicholson* v. *Patterson*, 6 Hum., 394; Freem. on Judg., sec. 260. A former decree merely dismissing the bill, if not expressed to be without prejudice, is conclusive of the matters of litigation: *Williamson* v. *Hollingsworth*, 5 Lea, 358; 2 Sto. Eq. Jur., sec. 1523. A decree, upon a demurrer, may be equally conclusive: *Murdock* v. *Gaskill*, 8 Baxt., 22. The cause of action may be so changed as to prevent the estoppel of a former decree upon demurrer: *Grotenkemper* v. *Carver*, 4 Lea, 375. But if the cause of action is the same, the neglect of the party to bring forward his whole case will not, as we have seen, alter the effect of the judgment or decree as *res adjudicata*. A finding against a party, either upon final hearing or demurrer, that his cause of action as shown by him, is barred by the statute of limitations or by laches is a decision upon the merits, concluding the right of action. The section of the Code was clearly not intended to apply to such a case. A party proceeds at his peril who, when his attention is directly drawn to the defects of his bill by the demurrer of his adversary, fails to amend with facts then within his knowledge, or capable of being obtained by reasonable diligence, even in a case where the ground of demurrer is lapse of time or laches: *McEwen* v. *Gillespie*, 3 Lea, 204. The bill is not protected by the section of the Code relied on, and the former decree is a bar to the present suit.

Parkes *v.* Clift.

But the demurrer in this case is conclusive upon another ground. The judgment sought to be impeached was recovered, and the sales of the land sought to be set aside were had in the lifetime of Thomas Parkes. The statute of limitations, and the period from which to complete the time to constitute laches began in his lifetime. The fraudulent concealment of the cause of action to prevent the bar must have operated against him. Now it is a significant fact that the bill no where expressly alleges ignorance on his part of the transactions complained of. It is left to be inferred from the allegation touching the invalidity of the judgment. The complainant and his brothers, it is said, knew nothing of the land or the judgment. But the intestate must have known of his title to the lands, and may have known of the judgment and the proceedings under it. They were had openly according to the usual course of the courts and judicial proceedings. The public recovery of a judgment for a large amount, and the public sale of large bodies of land are not likely to escape the attention of the principal party interested. The fact that the acknowledgment of service of the summons was not signed by the ancestor himself does not necessarily imply want of knowledge, for he may have authorized it to be signed in his name by the very person who proved the acknowledgment, and there is no averment of the want of such authority. After the lapse of over twenty years, and the death of all the parties to the transaction sought to be impeached, nothing should be left

to inference, and every intendment will be made against the pleader.

The decree will be reversed, the demurrer sustained, and the bill dismissed with costs.