# W. R. GRACE & COMPANY, Appellant, v. WALTER TAYLOR et al., Appellees. —398 S.W.(2d) 81.

Middle Section at Nashville. October 29, 1965.

Certiorari Denied by Supreme Court January 17, 1966.

228

Lewis D. Pride, Nashville, for appellant.

Solon Fitzpatrick, Clint Beasley, Carthage, for appellees.

HUMPHREYS, J. W. R. Grace & Company sued Walter Taylor and Woodrow Wilburn, alleging that

through one of its divisions, Davison Chemical Company, it entered into a contract of limited agency with the Smith County Farmers Cooperative of Carthage, Tennessee, whereby the Cooperative agreed to take complainant's fertilizer on consignment and sell and remit for it. That on the back of the contract, a full and absolute guaranty of due performance was given to complainant by defendants. That Smith County Farmers Cooperative was indebted to complainant in the amount of $2,251.19. The prayer was for a decree for this amount.

Appellees pleaded res judicata on the ground a bill on the same cause of action had previously been filed by complainant in November of 1961, but had been dismissed by decree of September 3, 1962, for want of prosecution.

The Chancellor overruled the plea of res judicata, holding there had been no trial upon the merits, and that the order of dismissal, even though it did not recite it was without prejudice, was not res judicata.

The appellees then answered the petition. Their defenses, insofar as the same are relevant to this appeal were, that the appellant had abandoned the contract of guaranty, and that the contract between Smith County Farmers Cooperative and appellant required that notice be given in writing that the contract had been accepted and that appellees were never notified to this effect.

The Chancellor first dismissed the suit on the ground notice of acceptance of the guaranty contract should have been given appellees by appellant; that failure to give this notice was a good defense. However, upon a petition to rehear, the Chancellor reconsidered and dismissed the suit on the ground of abandonment.

W. R. Grace & Company has prayed and been granted a broad appeal, and assigns as error the dismissal of its suit on the ground of abandonment, and Taylor and Wilburn have assigned as error the refusal of the Chancellor to sustain their defense of lack of notice, and their plea of res judicata.

We have concluded W. R. Grace & Company's assignment with respect to abandonment is good, and that the assignments on the res judicata and notice issues are not.

The res judicata assignment is based on the fact that W. R. Grace & Company in October 1961, prior to the filing of the present suit on October 24, 1962, filed another bill in the same court against the defendants for the same matter in demand and to the same effect, and for like relief. The plea recited, further, that on the third day of September, 1962, the court made a decree in the case as follows:

"This case came on this third day of September, 1962, before the Honorable A. F. Officer, Chancellor, the defendants announced ready for trial, the complainant failing to appear, they were duly called out and failed to appear and prosecute the suit.

It is therefore, ordered, adjudged and decreed by the Court that complainants' suit be dismissed for want of prosecution. Complainants and its sureties will pay the costs of this cause for which let execution issue."

The plea relies on this decree as one on the merits and as res judicata of the present suit.

Appellees contend on authority of Long v. Kirby-Smith, 40 Tenn.App. 446, 292 S.W.(2d) 216, and Parkes v. Clift, 77 Tenn. 524, that since this decree contained no

recitation that it was "without prejudice", it necessarily operated as res judicata. While, appellant contends on authority of Mabry v. Churchwell, 69 Tenn. 416; First National Bank of Lenoir City v. Ivie, 41 Tenn.App. 187, 293 S.W.(2d) 34; Bankhead v. Alloway, 1 Tenn. Ch.R. 207; Harris & Cole Bros. v. Columbia Water & Light Co., 114 Tenn. 328, 85 S.W. 897; Donalson v. Nealis, 108 Tenn. 638, 69 S. W. 732, and Beard v. Beard, 10 Tenn.App. 52, that the original English rule with respect to the effect of a decree of dismissal containing no stipulation against prejudice, (which was that such a decree was with prejudice) has not been the rule in Tennessee for many years, at least since Mabry v. Churchwell. In the Mabry case we find the following statement:

"The other question is, that a bill similar to this had been filed before the present one was prepared for hearing, and the case taken up and probably being heard, when complainants voluntarily dismissed the same, which was decreed by the Chancellor on their motion. It seems formerly in England this decree would have been final as res adjudicata, unless the bill had been dismissed without prejudice. But such has not been the rule in Tennessee. 'It is only a decree on the merits,' says this court in Hurst v. Means, 2 Sneed [546], 548, 'that is a bar to a subsequent suit.'" 69 Tenn. 424.

But, regardless of what may have been said in prior cases, we think this question is now ruled by Flournoy v. Brown, 216 Tenn. 166, 391 S.W.(2d) 617, and under this opinion the assignment of error is not good.

We have considered the differences between the Flournoy case and the one we have under consideration, but we end up of the opinion that Flournoy simply recog-

nizes and applies what practically every lawyer thought, and still thinks is the rule, that where it appears on the face of a decree of dismissal that it was not upon the merits, as in this case where it appears from the face of the decree the dismissal was based on want of prosecution, a suit on the same grounds may be reinstituted at anytime within one year, and that such a decree is not res judicata. As pointed out in the Flournoy case, this result is in keeping with and required by T.C.A. 28-106.

We are of opinion the assignment of error with respect to notice is not good, and must be overruled on authority of Hassell-Hughes Lumber Co. v. Jackson, 33 Tenn.App. 477, 232 S.W.(2d) 325. In that case, which reviews extensively many of our cases on guaranty, and the question whether notice of acceptance of the guaranty is necessary it is held that notice of acceptance of an absolute guaranty is not necessary.

The guaranty stipulation signed by the appellees is in this language:

"In consideration of the execution of the within contract by Davison Chemical Co., Div. of W. R. Grace & Co., I hereby guarantee the due performance by Smith County Farmers Coop named as distributor, of all the covenants and agreements on his part herein contained, and the payment of all damages, costs, and expenses which by virtue of the said contract may be recoverable from him by Davison Chemical Co., Div. of W. R. Grace & Co.

Dated 1-5-55

By s/ Walter Taylor

s/ Woodrow Wilburn"

\* \* \*

It is plain this is an absolute guaranty, so that all that was required to make it binding under the Hassell-Hughes Lumber case was that W. R. Grace & Company act on it, which it did.

Appellees are more or less prepared to agree that notice of acceptance of an absolute guaranty is not required in Tennessee. They say that even though this may be the law, the contract in this case contains an express stipulation for notice, which they never received, so there never was any contract of guaranty consummated.

This contention is based on a stipulation in the limited agency contract to this effect:

"8. CONSTRUCTION:

This contract is to be construed according to the laws of the State of Tenn. This document contains the full understanding between the parties and it is hereby certified there are no other understandings or agreements between us. This contract shall not be binding upon us until confirmed in writing by one of our duly authorized officials."

We do not think this contention is sound. Because, the stipulation is clearly for the benefit of complainant, and is between complainant, W. R. Grace & Company and the Smith County Farmers Cooperative. To illustrate: The contract opens with these words:

"Nashville, Tenn. Plant                    Date 1-5-1955

To Smith County Farmers Coop
P.O. Carthage County Smith State Tenn.
Shipping Point Carthage

Dear Sir:

We hereby agree to consign to you for sale, on com-

mission and for our account, such quantities and brands of our fertilizer products as may be mutually agreed upon from time to time, upon the following terms and conditions:''

The contract then goes on to set out the terms and conditions, and concludes with Paragraph 8, in pertinent part as follows:

''This contract shall not be binding upon us until confirmed in writing by one of our duly authorized officials.

Very truly yours,

DAVISON CHEMICAL COMPANY
Division of W. R. Grace & Co.
Nashville, Tenn.   Plant Location

Confirmed Jan. 25, 1955

by s/ C. H. Kirkham

Branch Manager.

s/ John D. Bracey

Salesman
Accepted and Agreed to
this 5th day of Jan. 1955

s/ Smith County Farmers Coop

(Seal)        Agent
s/ William Richardson, V. P.

Agent

Agent''

\*      \*      \*

As we interpret this contract, it consists, first, of an invitation by W. R. Grace & Company to Smith County Farmers Coop for it to offer to contract with Grace on certain terms and conditions, but the contract not to

become an executed contract until this offer is accepted by Grace. This is what the language means. And, this is implicit in the transaction, as this would allow Grace & Company to pass on the credit of the proffered guarantors before the contract would become binding on it. So, this stipulation was not an agreement that the guarantors would be notified in writing of the acceptance of the guaranty.

Further evidence this stipulation was not made for the benefit of appellees is found in the guaranty. It states, "In consideration of the execution of the within contract by Davison Chemical Company, Division of W. R. Grace & Company" the signers will be bound as guarantors. By this, appellees agreed to become bound when Grace & Company confirmed the contract in writing to the Coop. And, since the contract was confirmed in writing by one of appellant's duly authorized officials, Mr. Kirkham, a branch manager, on January 25, 1955, by his signing the contract for Grace, and furnishing a copy thereof to Smith County Farmers Coop at that time, (which fact is not in dispute) the contract became executed then, and the guarantors became liable then without further notice. Hassell-Hughes Lumber Co. v. Jackson, supra.

The only facts in evidence, on which the appellees must rely, bearing on the question whether Grace & Company abandoned the guaranty contract is to be found in the testimony of Clarence H. Kirkham, an office manager for appellant.

"Q. After that bill was finally paid, (a $25,000 indebtedness the Coop was slow paying), you denied the Smith County Farmers Cooperative any credit, didn't you?

A. When they were slow paying during 1959, and we put them on a cash basis, any goods that they desired, they would have to send a check along to cover it until such time as the previous season's purchases were clear.

Q. How long did it run along that you did not extend the Smith County Farmers Cooperative any credit?

A. I can't be sure, but there was not—it didn't cover a long period of time, merely a few months.

Q. It would amount to as much as one year, wouldn't it, that you would not extend any credit to the Smith County Farmers Cooperative?

A. I don't have those records with me, but I am quite sure it was not that long.

Q. Then, after you had denied credit to the Smith County Farmers Cooperative for whatever period it was, you later agreed with Mr. William Richardson, the Manager of Smith County Farmers Cooperative, that you would extend a limited credit to the Smith County Farmers Cooperative, and to him. A reasonable credit, or unlimited credit, I don't know which, to him personally?

A. Not an unlimited credit, no, sir. We agreed to extend to both a limited amount of credit.

Q. Then what was the limit you put on the Smith County Farmers Cooperative?

A. I believe that amounted to $2,000.

Q. What was the limit you put onto Mr. William Richardson?

A. Either two or three thousand dollars, I forget which." Vol. 2, Tr. pp. 42-43.

The authority on which appellees rely to sustain this defense is a statement in 28 C.J. Guaranty, sec. 151, pp. 992, 993, 38 C.J.S. Guaranty sec. 68, pp. 1230-1231 as follows:

"So, also, the guarantor is discharged from further liability where the guarantee abandons the guaranty with an intention no longer to rely thereon, and in such a case the guarantor's liability cannot be revived by any subsequent arrangement made without his consent between the guarantee and the principal." 28 C.J. Guaranty, sec. 151, pp. 992, 993.

The case cited in the footnote as authority for this statement (with which, of course we find no fault as we think a guaranty can be abandoned) was one in which the guarantee delivered over without reservation the guaranty contract to the principal debtor with the statement that it was worthless and that he was to return it to the guarantor and secure another. The Court, reasonably, held this amounted to an abandonment of the contract. Stewart v. Knight & Jillson Co., 76 N.E. 743, 66 Ind. 498.

In 1 C.J.S. sec. 1, p. 4, abandonment is defined:

"The voluntary relinquishment thereof (of property or a right) by its owner or holder, with the intention of terminating his ownership, possession, and control, and without vesting ownership in any other person." 1 C.J.S. Abandonment sec. 1, p. 4.

It is further defined there, as "the intentional relinquishment of a known right". This definition is, in effect, the same as that given in our Tennessee cases. Breedlove

v. Stump, 11 Tenn. 257; Coile v. Hudgins, 109 Tenn. 217, 70 S.W. 56; Hinds v. Buck, 177 Tenn. 444, 150 S.W.(2d) 1071; Carroll County Board of Education v. Caldwell, 178 Tenn. 671, 162 S.W.(2d) 391.

■ We find no evidence in the statement of the witness, Kirkham, or in the invoices to which he referred, in any way indicating an intention on the part of appellant to abandon the guaranty contract. All that appellant did was actually in the interest, and for the benefit, of appellees, and only served to reduce their existing liability and to prevent the creation of a large indebtedness in the future for appellees to pay.

■ Additionally, we do not think appellant's conduct in limiting credit and selling only for cash can be availed of by appellees for any purpose as all that was done is authorized by a stipulation in the contract as follows:

"We reserve the right to withhold further deliveries in case of any report or occurrence regarded by us as unfavorable to your credit, or in the event of any breach of this contract by you."

Since the action taken by appellant to protect itself and its guarantors against the accumulation of an indebtedness beyond the power of the Cooperative to pay was within the broad limits of this stipulation, and authorized by it, it did not discharge the guarantors from their liability.

■ While it is the rule in many jurisdictions that guarantors are favorites of the law, and that their liability will be determined in the light of this, this is not true in Tennessee. In Bright v. McKnight, 33 Tenn. 158 (1853), the Supreme Court said:

"It is important to trade and enterprise, which very often, if not most generally, depend upon a combination of the labor and energy of those without means with the credit of those who have them. The more difficult it is rendered to make these undertakings available, by complicated rules of notice, demand, etc., the less confidence will be reposed in them, and the credit and encouragement they afford to the enterprising and industrious will be in a great measure withdrawn.

In pursuance of this view, it was decided by the Supreme Court of the United States, in Drummond v. Prutman, 12 Wheat. 515, that a guarantor shall be held bound to the full extent of what appears to be his engagements, and the rule in expounding these undertakings is that the words of the guaranty are to be taken as strongly against the guarantor as the sense will admit. Fell on Guar., ch. 5, p. 127; 12 East, 227.

No injury can result from this doctrine, as it is in the power of guarantors to make their obligation dependent upon notice, demand, or any other condition they see proper, for their own protection and safety." 33 Tenn. 168, 169.

This attitude of our courts toward guarantors was reaffirmed in Stearns v. Jones, 138 Tenn. 589, 199 S.W. 400 (1917) and in Hassell-Hughes Lumber Co. v. Jackson, supra.

In this case, however, we have not had to resort to the strict liability doctrine, nor have we judged the case from this point of view. To the contrary of this, we think it is so plain and clear that the guarantor-appellees are liable on their guaranty, and have not been discharged by anything that was done, that even had they been the

"favorites of the law" that guarantors are elsewhere we should have had to hold them liable.

The appellant's assignment of error is sustained, the appellees' assignments of error are overruled, the decree of the lower court is set aside, and a decree is awarded for the amount sued for, $2,251.19. Costs against the appellees.

Shriver and Puryear, JJ., concurring.