**Thomas E. BATES et ux.,**
**Plaintiffs-Appellants,**

v.

**Fred HARP, Defendant-Appellee.**

**No. 76–2019.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1977.

Decided March 31, 1978.

W. Henry Haile, Nashville, Tenn., Oliver B. Dickins, Jr., Atlanta, Ga., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, T. V. A., Knoxville, Tenn., for defendant-appellee.

Before WEICK, EDWARDS and KEITH, Circuit Judges.

WEICK, Circuit Judge.

Appellants Bates and his wife have appealed from an order of the District Court dismissing their action for damages for personal injuries because of insufficiency of process in the state court where the action was originally filed, and later was removed to the federal court.

The action was filed by plaintiffs on October 16, 1974 in the Circuit Court of Davidson County, Tennessee, against the defendants, Fred Harp, George Moore, and the National Crane Corporation (National), to recover damages for personal injuries sustained by Bates when he was struck by a crane during the course and scope of his employment by Tennessee Valley Authority (TVA).

Bates did not sue his employer, TVA, because he had applied for and recovered full compensation paid to him for his injuries under the provisions of the Federal Employees' Compensation Act (FECA). 5 U.S.C. § 8101 *et seq.* Bates alleged that his injuries were caused by reason of the negligence of his fellow-employees, Harp and Moore, and by National, the manufacturer of the crane.

Bates had neglected to file his complaint and summons in the Circuit Court until one day prior to the expiration of Tennessee's one year statute of limitations (T.C.A. § 28–304) applicable to actions for injuries to persons. The address appearing on the summons issued for Harp and Moore was "c/o Tennessee Valley Authority, Lebanon Road, Nashville, Tennessee." Neither Harp nor Moore resided at that address.

The summons for non-resident National was returned served through the Secretary of State. The summons issued for Moore was returned by the Sheriff, not served; the summons issued for Harp was never returned.

Some ten months after filing the complaint, namely on August 16, 1975, an alias summons was issued for and was served upon Harp without filing a new complaint. Harp filed a motion in the Circuit Court to dismiss on the ground that the service of process on him was insufficient under the applicable Tennessee Rules of Civil Procedure. If plaintiffs had filed a new complaint at that time, which was within a period of one year, they would have fully complied with the Tennessee Rules of Civil Procedure. Before the Circuit Court had an opportunity to rule on the motion to dismiss, Harp removed the action to the Federal District Court under the provisions of 28 U.S.C. § 1442(a)(1). Harp then filed another motion to dismiss on the ground that plaintiffs' action was barred by the exclusive remedy provisions of the FECA.

The District Court held that plaintiffs' action was not barred by FECA and that the failure of plaintiffs to obtain sufficient process upon Harp, as required by the Tennessee Rules of Civil Procedure, deprived the federal court of jurisdiction. The District Court dismissed the action as to Harp and remanded the case to the state court for final disposition of the remaining issues. Plaintiffs voluntarily dismissed Moore and National, and have appealed from the order dismissing Harp. We affirm.

## I

### Sufficiency of the Process

The applicable Tennessee Rules of Civil Procedure provide as follows:

### RULE 3
### COMMENCEMENT OF ACTION

All civil actions are commenced by filing a complaint with the Court. An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be returned served or unserved; but if the process is returned unserved, plaintiff, if he wishes to rely upon the original commencement as a bar to the running of a statute of limitations, must either prosecute and continue the action by applying for and obtaining issuance of new process

from time to time, each new process to be obtained within six (6) months from return unserved of the previous one, or plaintiff must recommence the action within one (1) year after the return of the initial process not served.

### RULE 4
### PROCESS

*4.01. Summons; Issuance—By whom served.*—Upon the filing of the complaint the clerk of the court wherein the complaint is filed shall forthwith issue the required summons and cause it, with necessary copies of the complaint and summons, to be delivered for service to any person authorized to serve process. This person shall serve the summons, and his return indorsed thereon shall be proof of the time and manner of service. A summons may be issued for service in any county against any defendant, and separate or additional summonses may be issued against any defendant upon request of plaintiff. Nothing in this rule shall affect existing laws with respect to venue.

*4.03. Summons—Return.*—The person serving the summons shall promptly and within the time during which the person served must respond, make proof thereof to the court and shall identify the person served and shall describe the manner of service. If a summons is not served within thirty (30) days after its issuance, it shall be returned with the reasons for the failure to serve stated thereon. The plaintiff may obtain new summonses from time to time, as provided in Rule 3, after any prior summons has been returned unserved.

In dismissing the action the District Court ruled that the process was insufficient because the plaintiffs neglected to issue timely new process or to recommence the action as required by Rule 3.

The plaintiffs assert that the issuance of the alias summons on August 16, 1975 constitutes both a valid issuance of new summons and a recommencement of the action. We do not agree.

The recent decision of the Supreme Court of Tennessee in *Adams v. Carter County Memorial Hosp.*, 548 S.W.2d 307 (Tenn. 1977), disposes of the plaintiffs' contention that they properly issued new summons under Rule 3. In construing Rules 3 and 4 the Supreme Court stated:

Summons was issued for defendant Frost on February 8, 1974, the day the complaint was filed, but was not receipted for by the sheriff until August 14, 1974, on which date it was also served and returned. . . . It is clear, however, that the efficacy of this summons terminated upon the expiration of thirty days next following its issuance on February 8, 1974. Rule 4.03, Tenn.R.C.P. Thus, there could be no valid service of that summons after March 10, 1974, so that, the purported service upon defendant Frost on August 14, 1974, was ineffective and was properly quashed by the trial judge.

The Rules plainly contemplate that a summons will be either served within thirty days after its issuance or returned unserved promptly at the end of that period of time. They contain no express provision to govern the situation presented here, in which the summons is neither served nor returned unserved at the end of the thirty day period. Nevertheless, the plaintiff cannot sit idly by when confronted with such a situation. We hold that when the summons is not returned at the end of thirty days following its issuance, the plaintiff must apply for and obtain issuance of new process within six months, or recommence the action within one year, of the end of said thirty days period in order to preserve the original commencement of the action as a bar to the running of a statute of limitations.

Applying Rules 3 and 4, Tenn.R.C.P., as thus construed, to the case at bar, the plaintiff could have applied for and obtained issuance of a new summons up to and including September 10, 1974; but, since this was not done, the instant action became subject to abatement and was properly dismissed by the trial court. [*Id.* at 309–10]

It is plain from the holding of the Supreme Court of Tennessee that when the summons was not returned at the end of thirty days following its issuance, plaintiffs must then issue new process within six months or recommence the action within one year.

Plaintiffs did not issue new process within the six months period; therefore their action became subject to abatement and was properly dismissed by the District Court.

Rule 3 provides that plaintiffs must *recommence* the action within one year after the return of the initial process not served. The issuance of a new summons did not recommence their action. The only way they could *recommence* their action was to comply with Rule 3 which provides the method whereby an action may be originally commenced, namely, by the filing of another complaint.

The adoption of the Tennessee Rules of Civil Procedure in general, and Rule 3 in particular, resulted in a number of changes in the prior Tennessee practice relating to the recommencement of actions. First, the one year recommencement clause under T.C.A. § 28–105, which had been held inapplicable to suits in equity, *State v. Rawlings*, 170 Tenn. 577, 98 S.W.2d 95 (1936), now applies to such suits. More importantly, the rule utilizes the chancery court procedure of commencement by filing a complaint, rather than the prior practice in the law courts of commencement of an action by the issuance of summons. *Lee v. Crenshaw*, 562 F.2d 380, 382 (6th Cir. 1977). In light of these significant modifications of prior practice it seems incongruous to claim, as do the plaintiffs, that by retaining the recommencement clause of T.C.A. § 28–105 in Rule 3, the framers of the rule also intended to retain the prior method of recommencement. Rather, we think that it is more logical to hold, as did the District Court, that a change in the method of commencement of an action correspondingly carries with it a change in the method of recommencement.

Thus, while under former Tennessee practice in which actions at law were commenced by the issuance of summons, recommencement under Section 28–105 then required only the issuance of a new summons, *Bryant v. Mulder*, 163 Tenn. 600, 45 S.W.2d 48 (1932), under Rule 3, in which an action is commenced by the filing of a complaint, the recommencement of an action can be accomplished only by the filing of a new complaint, which should have been filed in the District Court. This construction of Rule 3 results in a definition of recommencement consonant with its normal meaning, "[t]o commence or begin again." Webster's New International Dictionary of the English Language 2080 (2d ed. 1956).

The District Court was correct in dismissing the complaint for insufficient process.

In *Adams, supra,* the Supreme Court of Tennessee further held:

> Nevertheless, it was error for the trial court to hold that further action against defendant Frost was barred by the statute of limitations of one year from the date of injury. That determination of the court was premature. Plaintiff may timely recommence the action against defendant Frost by filing a new complaint any time within one year of the entry of judgment of this Court affirming the order of dismissal of the trial court. T.C.A. § 28–106. This statute applies since the original action was timely filed and is being dismissed upon a ground not concluding the plaintiff's right of action. *W. R. Grace & Co. v. Taylor*, 55 Tenn.App. 227, 398 S.W.2d 81 (1965). [548 S.W.2d at 310]

This holding permits plaintiffs to file a new action within one year from the date of the entry of our order affirming the judgment. The order of remand of the District Court will permit this new action to be filed.

## II

### FECA

Harp advances two theories in support of his argument that the FECA bars recovery against a fellow-employee.[1]

■ Harp *first* contends that this Court should apply the traditional rules of master and servant to actions by fellow-employees under the FECA, and should hold that because the FECA grants immunity from suit to the TVA, 5 U.S.C. § 8116(c),[2] the retention of rights permitted by 5 U.S.C. § 8131(a) against third persons does not include fellow-employees, their acts being those chargeable to their employer, here the TVA.

As Harp recognizes, his contention has been rejected by the only Court of Appeals to address directly this precise issue, namely, *Allman v. Hanley*, 302 F.2d 559, 562–64 (5th Cir. 1962). *See also Marion v. United States*, 214 F.Supp. 320 (D.Md.1963); *Seligman v. Gerlach*, 28 Misc.2d 632, 215 N.Y. S.2d 634, *aff'd*, 15 A.D. 296, 226 N.Y.S.2d 678 (1961) (applying the FECA). In *Allman* a civilian employee of the United States sued Air Force medical officers and a civilian doctor employed by the Air Force for injuries allegedly caused by their negligence. In reversing the District Court's grant of summary judgment in favor of the defendants, the Fifth Circuit held:

1. It was not necessary for Harp to file a cross appeal in order to obtain a review of this issue. *Olympic Fastening Systems, Inc. v. Textron, Inc.*, 504 F.2d 609, 617–18 (6th Cir. 1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975).

2. 5 U.S.C. § 8116(c), known as the exclusive remedy provision, provides in pertinent part:
   The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his . . . spouse . . . and any other person . . . .
   The FECA is applicable to injuries sustained by employees of the TVA. 16 U.S.C. § 831b; *Posey v. TVA*, 93 F.2d 726 (5th Cir. 1937).
   Because the exclusive remedy provision makes FECA benefits the exclusive remedy to an "employee . . . his spouse . . . ," if fellow-employees are immune from suit, Mrs. Bates' action for loss of consortium would be barred.

We hold that since the Act itself recognizes the right of an employee to recover from "some person other than the United States" and a negligent co-employee is such a person in the absence of a specific provision to the contrary, it therefore follows that the Federal Employees' Compensation Act does not abrogate the common law right of an employee to sue a negligent fellow employee. [302 F.2d at 563 (fn. omitted)]

The Fifth Circuit's approach has been implicitly adopted by other Courts of Appeals in decisions dealing with the interplay of the Federal Drivers' Act, 28 U.S.C. §§ 2679(b)–(e), and the FECA, *Carr v. United States*, 422 F.2d 1007, 1010 (4th Cir. 1970); *Noga v. United States*, 411 F.2d 943, 944 (9th Cir.), *cert. denied*, 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969); *Gilliam v. United States*, 407 F.2d 818, 819 (6th Cir. 2969) (Combs, J., concurring).

The Fifth Circuit's approach has been adopted also in the District of Columbia Circuit in construing the relationship between the FECA and the District of Columbia Employees' Non-Liability Act, D.C. Code § 1–921, *et seq.* (Supp. IV 1977), *Davis v. Harrod*, 132 U.S.App.D.C. 345, 347, 407 F.2d 1280, 1282 & n.2 (1969); and in the United States District Court for the Western District of Washington in interpreting the interplay of the Suits in Admiralty Act, 46 U.S.C. § 741, *et seq.*, and the FECA, *Steudler v. Alaska S.S. Co.*, 361 F.Supp. 1149, 1150 (D.C.Wash.1973).

In each of these cases an employee who was covered by the provisions of the FECA brought suit against an allegedly negligent fellow-employee. Each of the relevant statutes granted immunity from suit to the negligent employee and substituted the government as the defendant. Although the courts recognized that an employee was liable to his fellow-employee for negligence, the various statutes were construed to preclude such suits.

Even though we are not persuaded that co-employee suits are advisable as a matter of policy, in light of the overwhelming authority in support of such suits, absent an explicit statutory bar, we feel constrained to follow the holding of *Allman v. Hanley, supra.* This decision is supported by an analysis of the history of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901, *et seq.* The exclusive liability provisions of the FECA and the LHWCA, 33 U.S.C. § 905(a), are nearly identical, *Murray v. United States*, 132 U.S.App.D.C. 91, 92, 405 F.2d 1361, 1362 (1968); *see Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 602, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963).

It is evident that Congress did not feel that the LHWCA's exclusive liability provision extended the employer's immunity to his employees because in 1959 the third party suit provision of the Act, 33 U.S.C. § 933(a), was amended to immunize employees against damage suits. An Act to Amend the Longshoremen's and Harbor Workers' Compensation Act, Pub. L. No. 86–171, 73 Stat. 391 (1959). *See also* S. Rep. No. 428, 86th Cong., 1st Sess. ——, *reprinted in* U.S.Code Cong. & Admin. News, pp. 2134, 2135 (1959). The logical conclusion to be drawn from such Congressional action is that an exclusive liability provision such as that found in the FECA, which by its own terms grants immunity solely to the employer, does not preclude co-employee suits.

Harp's *second* argument is that even if a suit between coemployees is permitted by the FECA, this action is in effect against the TVA and is therefore barred by the exclusive remedy provision of the FECA. In support of this contention Harp relies upon a 1966 resolution of the TVA Board of Directors adopted pursuant to Section 3 of the TVA Act, 16 U.S.C. § 831b, which provides in pertinent part:

> If an employee, while on official TVA business and while acting within the scope of his duties as determined by TVA in its sole judgment, does or refrains from doing an act which results in a legal action or claim being brought or asserted against him, TVA will assume financial and legal responsibility for the handling and disposing of all such legal actions and claims; provided that in order to receive

the protection of the above policy the employee must cooperate fully with TVA in the immediate reporting, investigating, and handling of the claim or lawsuit; must give TVA full control and authority over the management, defense, and settlement of the claim or lawsuit; and must not institute a lawsuit, counterclaim, or claim on his own behalf which, in the sole judgment of TVA, would make it impracticable for TVA to control, manage, defend, or settle the claim or lawsuit.

Because his alleged negligence occurred in the course of his employment and because any recovery against him will be paid by the TVA, Harp argues that the plaintiffs' suit is in substance and effect against the TVA and therefore is prohibited by the FECA's exclusive remedy provision which precludes employee suits against the TVA for work-related injuries. To permit the plaintiffs' action, he concludes, would circumvent the purpose of the exclusive remedy provision, namely to limit the TVA's liability to its injured employees to FECA benefits.

Although Harp's argument sounds logical, it suffers from the false premise that the plaintiffs' suit is actually against the TVA. The 1966 resolution upon which Harp relies is merely an indemnity provision comparable to provisions found in standard insurance policies. It is Harp, and not the TVA, against whom suit must be brought. It is Harp, and not the TVA, who is liable for negligence. The indemnification provision necessarily permits a plaintiff to recover from TVA, but TVA's assumption of liability was voluntary. The obligation of TVA to pay, however, arises independently of its liability under the FECA; therefore, permitting this suit involves no circumvention of the exclusive liability provision of the FECA.

The judgment of the District Court is affirmed.