Renfro HAYS, Plaintiff–Appellee,

v.

John G. MONTAGUE, Defendant and
Third Party Plaintiff–Appellant,

v.

John W. PIEROTTI and Minerva
Johnican, Third Party
Defendants–Appellees.

Court of Appeals of Tennessee,
Western Section, at Nashville.

Jan. 15, 1993.

Rehearing Denied Feb. 16, 1993.

Application for Permission to Appeal
Denied by Supreme Court
June 1, 1993.

Ronald D. Krelstein, Memphis, for defendant and third party plaintiff-appellant, John G. Montague.

J. Minor Tait, Jr., Memphis, Asst. Shelby County Atty., for third party defendants-appellees.

OPINION

CRAWFORD, Judge.

This case involves the ownership and ultimate right to possession of a rifle seized as evidence in the prosecution of James Earl

Ray for the murder of Dr. Martin Luther King, Jr.

In August, 1988, Renfro Hays filed suit against John G. Montague seeking rescission of an agreement dated March 3, 1988, whereby Hays agreed to sell the rifle to Montague, and Montague agreed, among other things, to "pursue all reasonable remedies to secure possession of the rifle from the State of Tennessee. . . ." The complaint avers that the agreed sale price was $25,000.00 and Hays was paid $1,500.00 as a part thereof. Hays alleges that Montague had failed to pursue the acquisition of the rifle as he was obligated to do under the agreement and also failed to perform other covenants in the agreement. The complaint seeks rescission of the agreement and monetary damages.

Montague's answer to the complaint admits the agreement but denies that he has failed to take steps to acquire possession of the rifle as required in the agreement. He joins issue on the other material allegations of the complaint. Montague filed a third party action against the then duly elected District Attorney General and the duly elected Criminal Court Clerk of Shelby County.[1] The third party complaint seeks a declaratory judgment that the rifle in question was not subject to forfeiture under the statutes of the State of Tennessee in existence in 1968 when the rifle was seized by the authorities. The third party defendants, District Attorney General and the Criminal Court Clerk, answered Montague's complaint and admitted that they had custody of the rifle and averred that the rifle was lawfully confiscated pursuant to the existing law, that the rifle was forfeited to the state and that in any event it was being held in "custodia legis" subject to further orders of the Criminal Court of Shelby County, Tennessee.

Montague filed a motion for summary judgment and the court, after hearing arguments of the respective parties, entered an order dismissing both the original complaint and the third party complaint. Hays, the original plaintiff, did not appeal and this appeal involves only the controversy between Montague and the District Attorney General and Criminal Court Clerk.

The material facts are undisputed and were established by stipulation. Introduced into evidence were part of the proceedings in the case of State v. Ray, No. 16645, Division III, Criminal Court of Shelby County, Tennessee, concerning the guilty plea of James Earl Ray to the charge of murder of Dr. Martin Luther King, Jr. The exhibits include an excerpt from the prosecutor's statement of facts used as a basis for accepting the plea, the exhibit list of physical evidence and the order of the criminal court for the retention and safe-keeping of the exhibits, including the rifle, pending further orders of the court.

Among other things, the statement of facts stated that on March 29, 1968, Ray, using the name of Harvey Lowmeyer, purchased a .243 caliber Winchester rifle. Later, Ray, still using the name of Lowmeyer, exchanged the .243 Winchester rifle for a 30–06 caliber rifle. The rifle given to Ray is the same rifle identified in the proceedings as the one used to kill Dr. Martin Luther King, Jr., and the rifle which is the subject of the case before us. The exhibit shows the 30–06 Remington rifle as the property of James Earl Ray and shows that the rifle was used to kill Dr. Martin Luther King, Jr. Ray's counsel, on behalf of Ray, stipulated that the facts stated by the prosecutor would have been proven had the case been tried before a jury. The rifle in question was introduced and accepted as an exhibit in the case and by order entered March 10, 1969, in the Criminal Court of Shelby County, Tennessee, the clerk of the court was ordered to retain and safely keep the rifle, among other exhibits, pending further orders of the court.

Also introduced was a copy of a settlement agreement between James Earl Ray and Renfro Hays dated February 10, 1987, for the purpose of settling the conflicting claims of Hays and Ray to the Ford Mustang automobile which was the subject of the suit in the U.S. District Court for the Western District of Tennessee styled Ray v. Shelby County, et al. The agreement provided,

---

1. The successors in office—John Pierotti, District Attorney General, and Minerva Johnican, Criminal Court Clerk—have been substituted as parties pursuant to Tenn.R.Civ.P. 25.04.

among other things, for each party to have a certain percentage of the proceeds from the sale of the Mustang and in addition thereto provided:

\* \* \* \* \* \*

7. James E. Ray agrees to Quitclaim to Renfro Hayes any interest he might have or has ever had in a certain Model 760, Game Master, pump action 30.06 caliber rifle with a Redfield telescopic sight and box for the rifle and sight, currently held by the clerk of the Shelby County Criminal Court in Memphis, Tennessee.

Also introduced as an exhibit was the Bill of Sale forming the basis of Hays' suit against Montague dated March 4, 1988, concerning the sale of the rifle by Hays to Montague. The agreement specifically recites that the rifle was being held by the Clerk of the Criminal Court and was the same rifle introduced into evidence in the case of *State v. Ray*. The agreement also provided that the purchase price was Twenty–Five Thousand ($25,000) Dollars with Fifteen Hundred ($1,500) Dollars being paid upon execution of the Agreement. The balance to be paid within five (5) days "from the date that the purchaser takes physical possession of the rifle described herein."

The Agreement states that Montague would pay all expenses necessary to secure the rifle from the State of Tennessee and that he would diligently pursue reasonable remedies to secure the possession of the rifle. The contract would remain in full force and effect as long as Montague pursued acquisition of the rifle. If Montague abandoned his interest in the weapon and failed to pursue his remedies, the contract provided that he would forfeit the Fifteen Hundred ($1,500) Dollars paid and any further right to the rifle.

In his findings of fact, the trial judge noted that although Ray had explicitly denied any "interest" in the rifle, he had purportedly quitclaimed his interest to Hays. The judge also noted that both parties to this appeal take the position that the proceedings on Ray's guilty plea established Ray's ownership of the rifle and that the Court should conclude the conflicting claim of the parties

by a determination of the issue of the right of return or transfer of weapons involved in criminal acts. The court concluded that the public policy of this state proscribed the return to the perpetrator of a weapon used in the commission of a crime and that the rifle in this instance was forfeited to the state pursuant to the provisions of then T.C.A. § 39–4911.

The only issue on appeal is whether the trial court erred in holding that the rifle in question was correctly forfeited to the state. The parties to the appeal recognize that some of the pertinent statutes in existence in 1968, when the alleged criminal act was committed, have been amended, but they concede that the case must be decided on the basis of the law existing at that time. The parties also recognize and concede that the rifle in question is in the custody of the criminal court pursuant to its valid and subsisting order and that any decision in this case is subject to the continuing control of the criminal court and will only be effective if and when the criminal court determines that no further need exists for retention of the rifle.

The parties agree that the controversy before the court must be decided pursuant to the law applicable in 1968. The statutes in force and effect in 1968 as pertinent to the controversy provide:

**39–4901. Carrying dangerous weapons—Penalty.**—Any person who shall carry in any manner whatever, with the intent to go armed, any razor, dirk, bowie knife or other knife of like form, shape or size, sword cane, ice pick, sling shot, blackjack, brass-knucks, spanish stilletto, or a fountain pen pistol or gun, or like instrument containing a firing pin capable of shooting tear gas or pistol cartridges, or any pistol or revolver of any kind whatever, except the army or navy pistol which shall be carried openly in the hand, or any other dangerous weapon, shall be guilty of a misdemeanor.

\* \* \* \* \* \*

**39–4911. Unlawful weapons on arrested persons forfeited.**—Whenever any person is arrested by any lawful officer of the state, county, or a municipality within the state, and the said person is found to have

on his person, or about him in an unlawful manner any unlawful weapon, such as bowie knife, black jack, knuckles, sling shots, pistols, burglar's tools, or any other weapon or device which is denominated as unlawful under the statutes of this state, which he is by law prohibited from carrying, the said unlawful weapon or weapons shall become the property of the state, county, or municipality, as the case may be.

**39–4912. Disposition of weapons found on arrested persons.**—All weapons may be destroyed or otherwise disposed of under the supervision and order of the judge, justice of the peace, or recorder before whom the person arrested is tried; but it is expressly provided that, in no event, shall said weapon or weapons be returned to the person arrested, or any of his relatives or friends, and it is further expressly provided that they shall not be sold or offered for sale in any part of the state.

Montague contends that the above statutes did not provide for forfeiture of the subject rifle and that in the absence of statutory authorization forfeiture was not authorized.

Article I, Section 12 of the Constitution of Tennessee provides:

**Sec. 12. No corruption of blood or forfeiture of estates.**—That no conviction shall work corruption of blood or forfeiture of estate. The estate of such persons as shall destroy their own lives shall descend or vest as in case of natural death. If any person be killed by casualty, there shall be no forfeiture in consequence thereof.

■ "[T]his section of the Constitution considers together and forbids corruption of blood and forfeitures upon conviction of crime or suicide and deodands[2]. All of these doctrines obtained at the common law." *Fields v. Met. Life Ins. Co.,* 147 Tenn. 464, 466, 249 S.W. 798, 799 (1922). Notwithstanding the constitutional prohibition to the forfeiture of property for criminal conviction, statutes providing for forfeiture of articles of

property held in commission of a crime are generally deemed constitutional when the forfeiture fairly tends to accomplish a legitimate purpose under the police power. *See* 37 C.J.S., Forfeitures, § 4a (1943).

■ Forfeitures are not favored by the law. When a statute does provide for a forfeiture, statutes are to be strictly construed. *Williams v. City of Knoxville,* 220 Tenn. 257, 416 S.W.2d 758 (1967); *Biggs v. State,* 207 Tenn. 603, 341 S.W.2d 737 (1960). "Before a confiscation statute may be used to deprive a person of his property the facts must fall both within the spirit and the letter of the confiscation law under which the sovereign proposes to act." *Biggs,* 207 Tenn. at 608, 341 S.W.2d at 740.

With the above rules in mind, we will examine the pertinent statutes heretofore set out.

In *Bohanan v. State,* an unreported opinion of the Tennessee Supreme Court filed January 18, 1971, the Supreme Court specifically considered the application of T.C.A. § 39–4901 to shotguns and rifles and held that they are not within the purview of the statute. The Court said in the per curiam opinion:

This Court, in *State v. Jones,* an unreported opinion released February 7, 1963, ruled that shotguns or rifles were not included within the ambit of T.C.A. § 39–4901 as it then read. Likewise, it has been a widely held opinion of bench and bar of this State over many years that the T.C.A. § 39–4901 has no application to rifles or shotguns; though we do not mean to intimate that such opinion has been unanimously so held.

It has long been the law in Tennessee that decisions construing the Constitution or Acts of the Legislature should be followed in the absence of cogent reason to the contrary. (citations omitted).

\* \* \* \* \* \*

*Bohanan* at 2–3.

■ T.C.A. § 39–4911 provides for forfeiture, in addition to the specific items listed

---

**2.** "A deodand" (a thing forfeited to God) was any personal chattel whatever, animate or inanimate, which, *becoming the immediate instrument* by which the death of a human creature was caused, was forfeited to the king, for sale and the distribution of the proceeds in alms to the poor by his high almoner, "for the appeasing of God's wrath." *Parker–Harris Co. v. Tate,* 135 Tenn. 509, 514, 188 S.W. 54, 55 (1916).

therein, of "any other weapon or device which is denominated as unlawful under the statutes of this state, which he is by law prohibited from carrying...." In 1968, there was no Tennessee law providing that a rifle was unlawful nor was the carrying of a rifle prohibited. *Id.*

T.C.A. § 39–4912 concerning the disposition of weapons purportedly deals with "all weapons" and further prohibits the return of a weapon to the person arrested or his relatives or friends. In *Biggs v. State,* 207 Tenn. 603, 341 S.W.2d 737 (1960), our Supreme Court was called upon to interpret T.C.A. § 39–4912 to determine what items the statute encompassed. The Court said:

> What, therefore, is the limitation, as reflected upon the face of the pertinent code sections, intended by the Legislature upon the expression "all weapons", as that expression is used in § 39–4912?
>
> The answer to the question just put is made obvious upon the face of the code section wherein its origin is shown. That showing is that § 39–4912 is Section 2 of Chapter 55 of the Public Acts of 1921. Section 1 of that Act is codified in the immediately preceding code section, to-wit, § 39–4911, as therein shown. That code section specifies certain weapons, including a pistol, which under the conditions stated in § 39–4911, shall be come by the express provisions of that code section the property of the sovereign involved. *Those are the weapons, the confiscation of which is authorized by § 39–4912 when there exist the conditions stated in § 39–4911.* (Emphasis added).

341 S.W.2d at 739.

Based on the pronouncements of our Supreme Court concerning the pertinent statutes as they existed in 1968, we hold that the statutes do not authorize the forfeiture of the rifle in question.

Appellees argue that under the holding in *State v. Bradam,* 584 S.W.2d 816 (Tenn. Crim.App.1979), the rifle in question is forfeitable. We must respectfully disagree. In *Bradam,* the trial court ordered weapons confiscated by law enforcement officers returned to the defendant. On appeal, the state contended that pursuant to T.C.A.

§ 39–4912, weapons can be adjudicated as contraband without a conviction for carrying a dangerous weapon under T.C.A. § 39–4901. The Court of Criminal Appeals agreed with the state's contention based upon its interpretation of T.C.A. § 39–4912 as amended in 1972. Chapter 783, Public Acts of 1972, amended T.C.A. § 39–4912 by deleting the section in its entirety and replacing it with a greatly expanded § 39–4912. The expanded statute, at issue in *Bradam,* among other things, provided for the return of confiscated fire arms under certain circumstances:

> [A]ny confiscated firearm found to have been stolen from its rightful and legal owner or one rightfully and legally possessing it, shall, at the conclusion of the last legal proceeding involving it, be forthwith returned to such owner or possessor, or if the person from whom it was seized is the rightful and legal owner or possessor of such firearm **and he is not convicted in any proceeding arising out of or involving the possession thereof,** it shall at the conclusion of such proceeding, be forthwith returned to him. (Emphasis added).

584 S.W.2d at 818.

■ The Court construed the language of T.C.A. § 39–4912, as amended, "to read ... the firearm will be returned to the person from whom it was seized only if this person is the rightful and legal owner or possessor of the firearm and this person is not convicted in any proceeding arising out of or involving the possession of the firearm. Otherwise, the confiscated firearms will be forfeited." *Id.* at 819. We have no quarrel with the Court of Criminal Appeals' interpretation of this statute. However, the statute interpreted by the Court of Criminal Appeals was passed in 1972, and cannot be given retroactive effect. This case is governed by the statute in effect in 1968. Tenn. Const. Art. 1, § 20.

Appellees also assert that the public policy of the state prohibits the return of the rifle to Ray. We must respectfully disagree. In *Smith v. Gore,* 728 S.W.2d 738 (Tenn.1987), our Supreme Court said:

> The law in Tennessee restricts this Court's role in declaring public policy.

The Court is not free to establish what its members believe to be the best policy for the State; rather, we must determine where public policy is to be found, what the specific public policy is, and how it is applicable to the case at hand. Ordinarily, the Court is not the institution that is called upon to divine the nature of public policy in its most general terms; this Court usually decides whether or not any controlling public policy has been established or declared and then determines how it applies to a particular case.

*Id.* at 746.

■ The public policy of this state as expressed in the state constitution opposes forfeitures for convictions of crimes unless specifically provided for. *See Whisnant v. Byrd,* 525 S.W.2d 152 (Tenn.1975); *Fields v. Met. Life Ins. Co.,* 147 Tenn. 464, 249 S.W. 798 (1923). We have heretofore discussed the statutes applicable to the issue before us and from the language of the statute we cannot find an indication that the legislature intended to favor general forfeitures as the public policy of this state.

The appellees next contend that Ray abandoned the rifle and thus could not convey any interest therein to Hays who in turn contracted with Montague.

The rifle was found at the murder scene by the authorities. In the guilty plea before the criminal court, Ray, in effect, agreed that he acquired the rifle as owner. He subsequently quitclaimed any interest he had in the rifle to Renfro Hays, although in the same instrument he states, "I have never claimed any ownership or equity in it." Obviously, the latter statement is not true since he did acquiesce in the statement of facts at his guilty plea wherein he was described as the owner of the weapon.,

■ Abandonment of property is generally defined as the voluntary relinquishment thereof by its owner with the intention of terminating his ownership, possession and control and without vesting ownership in any other person. 1 C.J.S., Abandonment, § 1 (1985). This definition was approved by the Middle Section of our Court in *W.R. Grace &* *Co. v. Taylor,* 55 Tenn.App. 227, 398 S.W.2d 81 (1965).

1 C.J.S., Abandonment, § 12 (1985) states in part:

Personal property, upon being abandoned, ceases to be the property of any person, unless and until it is reduced to possession with the intent to acquire title to, or ownership of, it. Such property may, accordingly, be appropriated by anyone, if it has not been reclaimed by the former owner, and ownership of it vests by operation of law, in the person first lawfully appropriating it and reducing it to possession with the intention to become its owner, provided such taking is fair. A person appropriating abandoned property, or any third person whom he may allow to take it, has a right to such property superior to that of the former owner.

■ In the case at bar, Ray clearly abandoned any interest he had in the rifle prior to any attempt to quitclaim any interest therein to Hays. Although the statement of facts in the guilty plea proceedings details the facts of ownership of the rifle by Ray, there is nothing to refute his previous abandonment by leaving the rifle at the crime scene. Moreover, Ray has emphatically disclaimed any ownership interest in the rifle. Clearly, the law enforcement authorities "found" the rifle and immediately placed it in "custodia legis", where it remains to this day. Under these facts, Ray abandoned the rifle and had no interest therein to convey to Hays.

Although the rifle was not forfeitable by virtue of the statutes in effect in 1968, the rifle is the property of the State by virtue of the possession acquired upon Ray's abandonment.

As we have heretofore noted, the trial court dismissed the original suit brought by Hays against Montague to rescind the agreement between them. The trial court also dismissed Montague's suit against the District Attorney General and the Criminal Court Clerk for a declaratory judgment. Hays has not appealed the dismissal of his case, and we make no ruling thereon. Montague's suit sought a declaratory judgment as to whether the rifle was forfeited to the state. Although the trial court found that it

was forfeited, the court dismissed the suit instead of entering a declaratory judgment. We disagree with the trial court on both propositions.

It is not the province of this Court to knowingly overrule decisions of the Supreme Court and if statutory interpretation different from the holdings in *Biggs* and *Bohanan* are to be made, it should be done by the Supreme Court. Accordingly, the order of the trial court dismissing the third party action is vacated and we hold that under the law as it existed in 1968, the rifle in question was not forfeitable. However, Montague has no ownership interest in the rifle for the reason above stated. We should also reiterate that this decision shall in no way be interpreted as having any effect on the custodial rights of the criminal court pursuant to its order previously described.

This case is remanded to the trial court for such further proceedings as are necessary, and costs of the appeal are assessed against the appellees.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.