FILED

08/31/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 28, 2017 Session

IN RE TENNESSEE WALKING HORSE FORFEITURE LITIGATION

**Appeal from the Circuit Court for Fayette County**
**No. 13-CV-61        J. Weber McCraw, Judge**

_____

**No. W2016-01000-COA-R3-CV**

_____

This is the second appeal involving the attempted forfeiture of horses that had allegedly been the victims of animal abuse. The State appeals the trial court's finding that Appellee owners had standing to contest the forfeiture and the grant of summary judgment to Appellee owners on the ground that the State failed to comply with applicable procedural requirements. We conclude that because Appellees are "owners" as defined by Tennessee Code Annotated section 39-11-702(3), they have standing to contest the forfeiture. We also conclude that the undisputed facts establish that the attempted forfeiture did not comply with the substantive and procedural requirements of the applicable forfeiture statutes. The trial court's ruling is, therefore, affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER, and BRANDON O. GIBSON, JJ., joined.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Linda D. Kirklen, Assistant Attorney General; Scott C. Sutherland, Assistant Attorney General, for the appellant, State of Tennessee.

J. Houston Gordon, Covington, Tennessee, for the appellees, Kelly Sherman, and Beverly Sherman.

**OPINION**

**Background**

This is the second appeal of this case. *See **In re Tennessee Walking Horse Forfeiture Litig.**,* No. W2013-02804-COA-R3-CV, 2015 WL 1636704, at *1 (Tenn. Ct. App. Apr. 8, 2015) ("***Walking Horse I***"). The material facts at issue in this case are largely undisputed and were detailed in this Court's prior Opinion. As we previously explained:

> On March 1, 2012, officials from the Fayette County Sheriff's Office and the United States Department of Agriculture seized two Tennessee Walking Horses, named "Paroled in the Night" and "Mucho Bueno," incident to the arrests of the horses' trainers, employees of Whitter Stables, for animal cruelty. The officials placed the horses into the custody of the Humane Society of the United States ("HSUS"). HSUS is not chartered with the State of Tennessee.
>
> On May 16, 2012, Beverly Sherman and Kelly Sherman ("Appellees"), the purported owners of the horses at issue, filed a Complaint for Possession or in the Nature of Replevin, seeking to recover the horses. The State of Tennessee ("State") filed an answer, denying that the Appellees were entitled to the return of the property.
>
> On May 22, 2012, the horse trainers pleaded guilty in the United States District Court for the Eastern District of Tennessee to soring[1] the horses at issue in violation of the Federal Horse Protection Act. The trainers also pleaded guilty to State animal cruelty charges involving the subject horses on July 10, 2013. According to the State, the trainers admitted, as part of their state-law guilty pleas, to having sored and abused the subject horses.
>
> The State filed an ex parte application for a forfeiture warrant for the horses on July 10, 2013. On the same day, the Fayette County Circuit [C]ourt issued an ex parte Forfeiture Warrant and Order placing the horses in the custody of the HSUS pending a final forfeiture determination.
>
> On August 9, 2013, the State filed a forfeiture complaint. The forfeiture complaint indicated that the State had information to believe that the Appellees were the owners of two of the horses.[2] However, the forfeiture complaint specifically reserved the issue of the Appellee's standing to contest the forfeiture. On September 2, 2013, the Appellees filed a motion to dismiss the forfeiture complaint or in the alternative, to consolidate the forfeiture litigation with the previously filed Replevin Lawsuit. The motion to dismiss was based upon the assertion that both the Replevin and the State's Forfeiture lawsuits dealt with identical issues,

---

[1] To sore, in the context of this case, is defined as "[t]o mutilate the legs or feet of (a horse) to induce a particular gait in the animal." *American Heritage College Dictionary* 1322 (4th ed. 2002).

[2] The forfeiture complaint also contained allegations regarding another horse and its purported owner. That horse and owner are not at issue in this appeal.

namely, the custody of the horses. The Appellees also argued that the forfeiture warrant was not properly issued because the State failed to obtain it within five (5) working days of March 1, 2012, as required by Tennessee Code Annotated Section 39-11-707(c). On the same day, the Appellees[] filed a motion to dismiss the forfeiture warrant, arguing generally the same basis as the motion to dismiss the forfeiture complaint.

*Walking Horse I*, 2015 WL 1636704, at *1 (footnotes in original).

The trial court eventually granted Appellees' motion to dismiss on the ground that the State had "violated certain procedural requirements contained in the forfeiture statutory scheme in taking possession of the subject horses." *Id.* at *2. An appeal to this Court followed, in which we ruled that the "threshold matter" of Appellees' standing to contest the forfeiture had never been decided by the trial court and had not been waived by the State. *Id.* at *5. As such, we vacated the judgment and remanded the case back to the trial court for a determination of standing. *Id.* at *6–*7.

The parties returned to the trial court, and Appellees filed a motion to show cause why their horses should not be returned to them in order to establish standing under Tennessee Code Annotated section 39-11-709(d). The parties later agreed that Appellees were the owners of the horses. The State argued, however, that in order to have standing to contest the forfeiture, Appellees were required to show that they were "innocent owners" under Tennessee Code Annotated section 39-11-701, discussed in detail, *infra*. Nevertheless, the trial court eventually ruled in favor of Appellees on the issue of standing, reasoning that Appellees sufficiently established that they were "innocent owners" because they had never been convicted of the crime of abusing horses. Immediately following the trial court's ruling on standing, Appellees filed a motion to deem admitted certain requests for admission that had been filed prior to the first appeal. Shortly thereafter, on November 4, 2015, Appellees filed a motion for summary judgment arguing that the State's forfeiture attempt should be dismissed due to its failure to follow certain procedural requirements. Appellees' motion was accompanied by a statement of undisputed material facts concerning the taking of the horses and the notice provided to Appellees. The State responded in opposition on January 21, 2016, generally admitting the procedure utilized by the State in seizing the horses, but including additional facts alleging that Appellees were aware of the abuse of their animals.

The State later filed a response to Appellees' motion to deem requests for admission admitted, arguing that it was not required to respond to the requests because they had not been refiled following the first appeal. The State also argued that this matter was criminal and therefore the Tennessee Rules of Civil Procedure regarding requests for admission were inapplicable.

The trial court entered an order on April 2, 2016, denying Appellees' motion to deem requests for admission admitted but granting Appellees' motion for summary judgment, ruling that the State failed to comply with procedural requirements under Tennessee Code Annotated section 39-11-701, *et seq.* and section 39-14-202(e). The State thereafter filed a timely notice of appeal to this Court.[3]

### Issues Presented

The State raises two issues, which are restated from its appellate brief:

1. Whether the trial court erred in determining that Appellees had standing to challenge the forfeiture under Tennessee Code Annotated section 39-11-701, *et seq.*?
2. Whether the trial court erred in granting Appellees' motion for summary judgment due to the State's failure to comply with applicable procedural requirements?

In the posture of appellee, Appellees contend that the trial court erred in denying Appellees' motion to have requests for admission deemed admitted.

### Discussion

### Standing

As an initial matter, we must first determine whether the trial court correctly concluded that Appellees had standing to intervene in this forfeiture proceeding and contest the forfeiture of the subject horses. The issue of whether a party has standing is a question of law. *Massengale v. City of E. Ridge*, 399 S.W.3d 118, 123 (Tenn. Ct. App. 2012) (citing *Cox v. Shell Oil Co.*, 196 S.W.3d 747, 758 (Tenn. Ct. App. 2005)). Therefore, "our review is de novo upon the record with no presumption of correctness accompanying the trial court's conclusions of law." *Cox*, 196 S.W.3d at 758.

As we explained in *Walking Horse I*, standing is a threshold matter that must be determined before a party may contest the forfeiture of property. *See Walking Horse I*, 2015 WL 1636704, at *2–*3. Standing in this case is governed by Tennessee Code Annotated section 39-11-701, *et seq. Id.* at *2 (holding that although the forfeiture of animals allegedly abused is governed by section 39-14-202(e), section 39-11-709 governs the procedure for establishing standing) (citing *State v. Siliski*, No. M2004-02790-CCA-R3-CO, 2006 WL 1931814, at *3 (Tenn. Crim. App. July 10, 2006) ("We recognize that animals forfeited under the animal cruelty statutes are not property acquired or received

---

[3] Both the trial court and this Court subsequently denied motions to stay the trial court's judgment pending appeal.

as a result of the offense, but absent any forfeiture procedures within Part 2 on Animals, we look to the general provisions of this title for the proper procedure.")).

In interpreting the statutes governing standing, we apply the familiar rules of statutory construction. As explained by our supreme court:

> "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn.1993)). "The text of the statute is of primary importance." *Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). A statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says. *See BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997).
>
> Statutes that relate to the same subject matter or have a common purpose must be read in pari materia so as to give the intended effect to both. "[T]he construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (quoting *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809 (Tenn. 1994)). We seek to adopt the most "reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws." *Carver v. Citizen Utils. Co.*, 954 S.W.2d 34, 35 (Tenn.1997). Issues of statutory interpretation present a question of law, which we review de novo on appeal, giving no deference to the lower court decision. *Mills*, 360 S.W.3d at 366; *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

*In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015). As such, we first consider the text of the statute.

To begin, the forfeiture statute at issue here "mandates that '[o]nly an owner or interest holder may make a claim for return of property seized for forfeiture or otherwise contest the forfeiture under this part.'" *Walking Horse I*, 2015 WL 1636704, at *4 (quoting Tenn. Code Ann. § 39-11-709(a)). Tennessee Code Annotated section 39-11-708(d) therefore provides that: "The claimant must first establish by a preponderance of the evidence that the claimant is an owner in the property seized before other evidence is taken. The claimant has the burden of establishing standing to assert the claim." Thus, section 39-11-709(a) and (d) make clear that to have standing to contest the forfeiture of property under the general forfeiture statutory scheme, the claimant must establish that he or she is an owner or interest holder in the subject property. *See also* Tenn. Code Ann. § 39-11-708(c) ("Any party who claims an interest in the property subject to forfeiture must first establish by a preponderance of the evidence that the party is an owner or

interest holder in the property seized before other evidence is taken. The claimant has the burden of establishing standing to assert the claim."). An owner of property for purposes of the general forfeiture statute is expressly defined by the statute as "a person, other than an interest holder, who has an interest in the property." Tenn. Code Ann. § 39-11-702(3). In contrast, an interest holder is defined as "a secured party within the meaning of § 47-9-102(a), a mortgagee, lien creditor, one granted a possessory lien under law, or the beneficiary of a security interest or encumbrance pertaining to an interest in property, whose interest would be perfected against a good faith purchaser for value." Tenn. Code Ann. § 39-11-702(2).

In this case, there can be no dispute that Appellees "ha[ve] an interest" in the subject horses. Tenn. Code Ann. § 39-11-702(3). Indeed, in response to Appellees' later filed statement of undisputed facts in support of the motion for summary judgment, the State admitted that Appellees are the "title-holders" of the subject horses.[4] As such, they clearly qualify as "owners" sufficient to confer standing in this case. *See* Tenn. Code Ann. § 39-11-702(3).

The State argues, however, that mere ownership is insufficient to confer standing on Appellees. Rather, the State contends that Appellees must also show that they are innocent, citing Tennessee Code Annotated section 39-11-701(c). Section 39-11-701 contains the legislative intent of the general forfeiture statute. Among other things, the statute states: "It is further the intent of the general assembly to protect bona fide interest holders and **innocent owners** of property under this part. It is the intent of the general assembly to provide for the forfeiture of illegal profits without unduly interfering with commercially protected interests." (Emphasis added). Based upon this provision, the Tennessee Court of Criminal Appeals, in two unreported cases, has indicated that the purpose of the forfeiture statute is to protect "innocent owners" and interest holders in property. *See* **State v. Marshall**, No. M2004-02442-CCA-R3-CD, 2005 WL 1315704, at *3 (Tenn. Crim. App. June 3, 2005) ("The legislature has made its intent clear: 'protect[ing] bona fide interest holders and innocent owners of property' under Chapter 11.") (quoting Tenn. Code ann. 39-11-701(c)); *see also* **State v. A Tract of Land Known as 141 Belle Forest Circle**, No. M2000-01827-CCA-R3-CD, 2001 WL 1517028, at *4 (Tenn. Crim. App. Nov. 29, 2001) ("[I]f neither an innocent owner nor interest holder as defined in the 1998 Act, the appellant is not afforded protection under the Act."). We cannot agree that a threshold showing of innocence is required to establish standing to contest a forfeiture.

First, as previously discussed, section 39-11-709 contains the specific procedures for establishing standing. Nowhere in this statute is it stated that a finding that the claimant is "innocent" is required to establish standing to contest a forfeiture. Instead, the

---

[4] Specifically, Beverly Sherman is the title-holder of "Mucho Bueno," while Kelly Sherman is the title-holder of "Paroled in the Night."

claimant must merely establish that he or she is an "owner" of the property. Tenn. Code Ann. 39-11-709(d). Likewise, the definition of owner contained in the statute makes no mention of a requirement that the claimant establish his or her innocence. *See* Tenn. Code Ann. § 39-11-702(3). Because these statutes specifically govern the question of standing to contest a forfeiture, they control over the more general statute elucidating the General Assembly's intent in enacting the statutory scheme. Indeed, it is well established that a statute that is specific in nature controls over a statute that is general in nature. *Matter of Harris*, 849 S.W.2d 334, 337 (Tenn. 1993); *Watts v. Putnam County*, 525 S.W.2d 488, 492 (Tenn.1975). In *Valley Fidelity Bank & Trust Co., v. Ayers*, 861 S.W.2d 366, 369 (Tenn. Ct. App. 1993), this Court stated: "A specific statute or a special provision of a particular statute controls a general provision in another statute or a general provision in the same statute." Thus, the specific provision of the forfeiture statutory scheme requiring only a threshold showing that a claimant is an owner of property controls the determination of standing in this case. Indeed, neither case cited by the State relying on the legislative intent of the general forfeiture statute actually held that a showing of innocence was required for an owner to contest a forfeiture; accordingly, they are inapposite to the analysis in this case. *See Marshall*, 2005 WL 1315704, at *3 (involving an effort to set aside an agreed order of forfeiture where the claimant failed to identify any specific procedures that were violated by the seizure); *141 Belle Forest Circle*, 2001 WL 1517028, at *4 (involving a case where the claimant "concedes . . . that it is neither an owner nor an interest holder" and therefore cannot contest the forfeiture).

Our holding herein is entirely consistent with two recent Tennessee Supreme Court cases involving forfeiture. Most recently, in *State v. Tuttle*, 515 S.W.3d 282 (Tenn. 2017), a claimant was convicted of conspiracy to possess over 300 pounds of marijuana with intent to sell or deliver and conspiracy to commit money laundering. *Id.* at 289. In conjunction with those convictions, the State sought to forfeit cash found on the defendant's property that was allegedly subject to forfeiture under Tennessee Code Annotated section 39-11-701, *et seq. Id.* at 320 (citing Tenn. Code Ann. 39-11-703(c) (making property acquired in violation of a statute subject to forfeiture)). Despite the language of section 39-11-701(c) regarding "innocent owners" and the defendant's convictions, the Tennessee Supreme Court considered the defendant's challenge to the forfeiture of cash found on the defendant's property during a police search. *Tuttle*, 515 S.W.3d at 320–21. Indeed, the Court only allowed the forfeiture of the defendant's property after concluding that the State satisfied its burden by a preponderance of the evidence that the substantive and procedural requirements of the statute had been met. *Id.* at 321 (citing *Sprunger*, 458 S.W.3d at 499–500) ("We also reiterate that the State bears the burden of proving by a preponderance of the evidence that it complied with the procedural and substantive requirements established by forfeiture statutes."). Thus, the convictions were not a bar to the claimant's right to contest the forfeiture on procedural or substantive grounds.

In reaching this result the Tennessee Supreme Court relied on another recent case, *State v. Sprunger*, 458 S.W.3d 482 (Tenn. 2015). In *Sprunger*, the defendant had been convicted of "Class B felony of sexual exploitation of a minor under Tennessee Code Annotated § 39-7-1003, the knowing possession of over 100 images of child pornography." *Id.* at 487. Despite this conviction, the Tennessee Supreme Court reversed the seizure of the claimant's property on the ground that the State failed to strictly comply with the procedural safeguards contained in the forfeiture statutes. *Id.* Although the forfeiture in *Sprunger* was not based upon Tennessee Code Annotated section 39-11-701, *et seq.*, the reasoning of *Sprunger* is applicable in all forfeiture cases. *See Tuttle*, 515 S.W.3d at 320–21 (applying the holding in *Sprunger* to a case under section 39-11-703); *see also Sprunger*, 458 S.W.3d at 494 (broadly holding that all "'statutes authorizing forfeitures are to be strictly construed'") (quoting *Watson v. Tennessee Dep't of Safety*, 361 S.W.3d 549, 555 (Tenn. Ct. App. 2011), *abrogated by Sprunger*). We therefore likewise consider the reasoning of *Sprunger* as applied to the facts in this case.

As the *Sprunger* court explained: "'Forfeiture or confiscation is a proceeding of a harsh nature, and unless accomplished pursuant to the law of the land is in violation of the 5th Amendment to the Constitution of the United States. Consequently confiscation must be accomplished in the manner provided by law.'" *Sprunger*, 458 S.W.3d at 493 (quoting *Wells v. McCanless*, 184 Tenn. 293, 198 S.W.2d 641, 642–43 (1947)). As such,

> the governmental authority seeking forfeiture must present affirmative proof that it has complied with both the procedural and the substantive requirements in the forfeiture statutes enacted by our Legislature. Consistent with the civil nature of forfeiture proceedings, the State's burden of proof as to both the procedural and substantive statutory requirements is by a preponderance of the evidence.

*Sprunger*, 458 S.W.3d at 499 (citing *Stuart*, 963 S.W.2d at 33). Importantly, the *Sprunger* Court noted: "'[T]he Legislature meant to prescribe conditions under which and under which alone the confiscation could be accomplished, and that such provisions are not mere idle suggestions to be disregarded at will by the officers of the State.'" *Sprunger*, 458 S.W.3d at 499 (quoting *Wells*, 198 S.W.2d at 643). Thus, the State bears the burden of establishing "that the property is subject to forfeiture" due to the alleged criminal activity of an owner or interest holder in the property. Tenn. Code Ann. 39-11-708(c). As a result, "[w]here 'the conditions prescribed [for forfeiture] . . . . have not been complied with[,] . . . no forfeiture or confiscation has occurred.'" *Sprunger*, 458 S.W.3d at 500 (quoting *Wells*, 198 S.W.2d at 643).

Applying the reasoning and holding of *Sprunger* to this case, we must conclude that the State's proffered rule conflicts with the protections that are present in forfeiture proceedings. Indeed, requiring that the claimant first establish his or her innocence in order to raise a challenge to the procedure used to seize property under the forfeiture

statutes clearly conflicts with both the letter and the spirit of **Sprunger** to ensure that the State complies with the procedural and substantive requirements of the forfeiture statutes, including the requirement that the State tie the property to criminal activity. *See also Tuttle*, 515 S.W.3d at 321 (applying the rule in **Sprunger** to a forfeiture under section 39-11-703(c)). To hold otherwise would be to relieve the State of its burden to ensure that the property is subject to forfeiture because it was somehow involved in criminal activity, *see* Tenn. Code Ann. 39-11-708(c), as well as excuse the State's failure to follow procedural safeguards in any case where the claimant could not affirmatively establish his or her innocence. Such a result is untenable and not required by the plain language of the standing provisions contained in Tennessee Code Annotated section 39-11-709.

Based upon the plain language of section 39-11-709, the rules of statutory construction, and the Tennessee Supreme Court's decisions in **Sprunger** and **Tuttle**, we hold that in order to establish standing to contest a forfeiture under Tennessee's general forfeiture statutory scheme, the claimant need not make a threshold showing that he or she is "innocent." [5] Rather, the claimant must comply with the specific requirements of

---

[5] The State also argues that the requirement that a claimant establish his or her innocence is implied by Tennessee Code Annotated section 39-11-704. As stated in the State's appellate brief:

> Subsection 704 provides in pertinent part:
>
> > (a) No interest in any property described in § 39-11-703(a) shall be subject to forfeiture when one (1) of the following conditions is established:
> >
> > * * *
> >
> > (2) If . . . the owner or interest holder:
> > (A) Acted reasonably to prevent the conduct giving rise to forfeiture; or
> > (B) Did not know of the acts giving rise to forfeiture.

(Footnote omitted).

We cannot agree that the above language had any bearing on the analysis in this case. In the first instance, the plain language of section 39-11-704(a) indicates that this exception is applicable in the case where the State seeks to forfeit an owner's interest in the proceeds from criminal activity. Here, the totality of subsection (a) provides:

> (a) No interest in any property described in § 39-11-703(a) shall be subject to forfeiture when one (1) of the following conditions is established:
>
> (1) If the owner or interest holder acquired the property before the conduct alleged to give rise to its forfeiture;
> (2) If the owner or interest holder acquired the property during or after the conduct alleged to give rise to its forfeiture, and the owner or interest holder acquired this interest as a good faith purchaser for value, or acquired this interest in a commercially reasonable manner, and the owner or interest holder:

section 39-11-709.[6] Here, Appellees complied with the requirements of section 39-11-709 to establish that they are "owners" as that term is defined by section 39-11-702(3). Accordingly, the trial court correctly concluded that they had standing to contest the forfeiture in this case. We therefore proceed to consider whether the trial court correctly granted summary judgment in favor of Appellees based upon the State's failure to comply with the procedural requirements of Tennessee Code Annotated sections 39-11-701, *et seq.* and 39-14-202.

## Summary Judgment

## Standard of Review

The trial court in this case granted summary judgment in favor of Appellees. Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. On appeal, this Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis*, MPLLC, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)), *cert. denied*, 136 S. Ct. 2452, 195 L.Ed. 2d 265 (2016). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor.

---

(A) Acted reasonably to prevent the conduct giving rise to forfeiture; or
(B) Did not know of the acts giving rise to forfeiture.

Clearly, these provisions simply do not apply to the situation wherein the criminal activity at issue involved harm to the property that is sought to be forfeited. Indeed, if we were to apply the plain language of subsection (a) to the facts in this case, the horses at issue are not subject to forfeiture because they were acquired by Appellees prior to the criminal conduct giving rise to this case. *See* Tenn. Code Ann. § 39-11-704(a)(1). The State's argument that this section provides support for the forfeiture in this case is therefore unavailing.

Moreover, the plain reading of the exemptions contained in section 39-11-704 indicate that they apply not to the question of standing, but the question of whether property may ultimately be forfeited to the State. Indeed, from our reading of section 39-11-704, these exemptions apply even if the State complied with all other procedural requirements applicable to justify the forfeiture. The exemptions do not, however, place additional requirements on claimants to assert that the forfeiture of their property was inappropriate because the State failed to strictly comply with the procedural and substantive requirements of the forfeiture statutes at issue.

[6] The State suggests in its brief that a showing of innocence was held to be a requirement to establish standing under this Court's Opinion in *Walking Horse I*. We disagree. Although this Court in *Walking Horse I* noted the language of section 39-11-701 regarding protecting "innocent owners," the court did not decide the standing issue presented in this appeal nor did it hold that innocence was required to establish standing. *Walking Horse I*, 2015 WL 1636704, at *3. Rather, this Court held that Appellees' alleged innocence was insufficient to show **ownership** of the subject horses. *Id*.at *6. This Court did not hold, however, that both innocence and ownership were required to establish standing.

- 10 -

*Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). When a moving party has filed a properly supported motion for summary judgment, the nonmoving party must respond by pointing to evidence that shows summary judgment is inappropriate. *Rye*, 477 S.W.3d at 264–65.

This Court may affirm the trial court's grant of summary judgment on different grounds than that relied upon by the trial court. *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citing *Wood v. Parker*, 901 S.W.2d 374 (Tenn. Ct. App. 1995)).

**Forfeiture**

The State next argues that the trial court erred in concluding that the State failed to follow certain procedural requirements in both the general forfeiture statutes and the animal cruelty statutory scheme, resulting in the dismissal of their forfeiture complaint. Forfeiture is defined as "'[t]he divestiture of property without compensation." *State v. Sprunger*, 458 S.W.3d 482, 492 (Tenn. 2015) (quoting *Black's Law Dictionary* 722 (9th ed. 2009)). In *Sprunger*, as in this case, "the divestiture occurs because of a crime and title to the forfeited property is transferred to the government." *Sprunger*, 458 S.W.3d at 492 (quoting *Black's Law Dictionary*, at 722)). Although the Tennessee Supreme Court recognized that asset forfeiture "is an extraordinary exercise of the State's police power," *Sprunger*, 458 S.W.3d at 493 (quoting *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974)), it remains a civil proceeding subject only to the preponderance of the evidence burden of proof. *Sprunger*, 458 S.W.3d at 492–93 (citing *U.S. v. Ursery*, 518 U.S. 267, 274, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996); *Stuart v. State Dep't of Safety*, 963 S.W.2d 28, 33–34 (Tenn. 1998)). In spite of this "less onerous burden"—or perhaps because of it—forfeiture proceedings must strictly comply with both the statutory authority authorizing the divestment, as well as constitutional due process protections. *Sprunger*, 458 S.W.3d at 493 (noting that forfeiture is disfavored under Tennessee law). Furthermore, strict compliance with our state's forfeiture statutes is not excused simply because the failure involves only "technical violations" of the applicable statutes or the fact that the property owner is not prejudiced by the failure. *Sprunger*, 458 S.W.3d at 499 (citing *Redd v. Tenn. Dep't of Safety*, 895 S.W.2d 332, 335 (Tenn.1995) ("Statutes authorizing forfeitures are to be strictly construed.")).

As previously discussed, this case involves two interconnected statutory schemes, the general forfeiture statutes, Tennessee Code Annotated section 39-11-701, *et seq.* and

40-33-201, *et seq.*,[7] and the statute specifically applicable in cases involving cruelty to animals, Tennessee Code Annotated section 39-14-202. Section 39-14-202(e) provides that:

> In addition to the penalty imposed in subsection (g) [i.e., a criminal penalty],[8] the court making the sentencing determination for a person convicted under this section shall order the person convicted to surrender custody and forfeit the animal or animals whose treatment was the basis of the conviction. Custody shall be given to a humane society incorporated under the laws of this state. The court may prohibit the person convicted from having custody of other animals for any period of time the court determines to be reasonable, or impose any other reasonable restrictions on the person's custody of animals as necessary for the protection of the animals.

Because this case involves the seizure of animals based upon allegations of animal cruelty, the State argues that section 39-14-202 and its accompanying procedure are applicable in this case. Section 39-14-210(f) as it existed at the time of the seizure goes on to state:

> Custody of any animal victimized under this part shall be placed with any humane society chartered by the state immediately upon arrest of the person alleged to have violated this part. The humane society shall assist the animal and preserve evidence for prosecution.

Tenn. Code Ann. 39-14-210(f) (2012).[9]  Finally, section 39-14-210(g) provides certain procedures for the posting of a bond and the abandonment of the animal, as discussed in detail, *infra*.

---

[7] As discussed in detail, *infra*, Section 39-11-701, *et seq.* generally applies to certain types of seizure of real property, as well as real or personal property "directly or indirectly acquired by or received in violation of any statute or as an inducement to violate any statute, or any property traceable to the proceeds from the violation[.]" Tenn. Code Ann. 39-11-703. In contrast, section 40-33-201, *et seq.* applies to: "All personal property, including conveyances, subject to forfeiture under § 39-14-307, § 47-25-1105, § 53-11-451, § 55-16-104, § 55-50-504(h), § 55-10-414, § 57-3-411, § 57-5-409, § 57-9-201, § 67-4-1020, or § 70-6-202[.]"  The *Siliski* Court held that the procedures outlined in Section 39-11-701, *et seq.* applied to forfeitures under Sections 39-14-202 and 39-14-210; accordingly, we apply those procedures to the claimed forfeiture under Chapter 14. See *Siliski*, 2006 WL 1931814, at *3.

[8] Specifically, subsection (g) states:

(1) Cruelty to animals is a Class A misdemeanor.
(2) A second or subsequent conviction for cruelty to animals is a Class E felony.
(3) Violation of any prohibition or restriction imposed by the sentencing court pursuant to subsection (e) is a Class A misdemeanor.

[9] While the State concedes that the horses in this case were not placed with a "humane society

Respectfully, we cannot agree that sections 39-14-202 and 39-14-210 provide support for the forfeiture of the animals in this case. As noted above, section 39-14-202 expressly states that forfeiture under that subsection is applicable "in addition to" a criminal penalty for "the person convicted," and that the surrender and forfeiture should be carried out by "the court making the sentencing determination[.]" None of these requirements are applicable in this case. First, the forfeiture complaint at issue here was filed as an *in rem* civil action, rather than as part of a criminal matter. *See **Sprunger***, 458 S.W.3d at 492 (quoting ***Ursery***, 518 U.S. at 274) ("[F]orfeiture actions are *in rem*, regarding the property; while they proceed parallel to criminal prosecutions and are 'based upon the same underlying events,' they are civil in nature."). Moreover, Appellees were never convicted of the crime of animal cruelty under section 39-14-202(g). While the general forfeiture statutes may not require a conviction, the specific provision relied on here, section 39-14-202(e), clearly does. *C.f. **Sprunger***, 458 S.W.3d at 493 n.19 ("Tennessee courts have noted that, under Tennessee's statutes, forfeiture can occur even where the underlying criminal charges are dismissed."). Accordingly, there is no criminal penalty upon which the surrender and forfeiture of victimized animals may be appended, as required by the plain language of section 39-14-202(e).

"The public policy of this state as expressed in the state constitution opposes forfeitures for convictions of crimes unless specifically provided for." ***Sprunger***, 458 S.W.3d at 494 (quoting ***Hays v. Montague***, 860 S.W.2d 403, 408 (Tenn. Ct. App. 1993)). Because forfeiture of Appellees' interest in the subject horses is not "specifically provided for" in section 39-14-202 and 39-14-210, we cannot conclude that forfeiture under these sections was authorized. Instead, having construed sections 39-14-202 and 39-14-210 to strictly align with the Tennessee Constitution's disfavor of forfeiture, *see **Sprunger***, 458 S.W.3d at 500, we must conclude that the plain language of section 39-14-202 does not authorize the seizure and forfeiture of Appellees' interest in the animals in this case. *See **id.*** at 499 (quoting ***Wells***, 198 S.W.2d at 643) ("The forfeiture statutes provide 'that the property shall be subject to forfeiture, not that it is automatically forfeited or confiscated. [They] lay[ ] down certain procedure to be followed. This procedure constitutes the conditions under which the confiscation is accomplished. In other words, the proceeding is conditioned upon compliance with the conditions prescribed.'").

---

chartered by the state," it notes that this requirement was removed from the statute in 2013. *See* Tenn. Code Ann. 39-14-210(f), eff. April 27, 2013 ("Upon seizure by law enforcement, custody of any animal victimized under this part shall be placed with any governmental animal control agency, law enforcement agency, or their designee. The governmental animal control agency, law enforcement agency, or their designee shall assist the animal and preserve evidence for prosecution."). As such, the State asserts that this Court should give the current version of section 39-14-210(f) retroactive effect and conclude that the State complied with all procedural requirements applicable in this particular case. Because of our decision regarding the applicability of sections 39-14-202 and -210, we need not decide this issue.

- 13 -

Although we must read section 39-14-202 *in pari materia* with the other provisions of the statute, *see In re Kaliyah*, 455 S.W.3d at 552, our interpretation is not altered by consideration of the other statutes in this scheme. We concede that Tennessee Code Annotated section 39-14-210(g) mentions the rights of owners to animals where the animals were seized through the criminal conduct of another. The statute states, in relevant part:

> (g)(1)(A) Any governmental animal control agency, law enforcement agency, or their designee into whose custody any animal victimized under this part is placed, may petition the court requesting that the person from whom the animal is seized, or the owner of the seized animal, be ordered to post security.
>
> *   *   *
>
> (2) . . . . [I]f the person from whom the animal was seized is not the owner of the animal and the person has not posted the court-ordered security within fifteen (15) days, the court shall order the governmental animal control agency, law enforcement agency, or their designee to make all reasonable efforts to determine who the owner of the animal is and to notify the owner of the pending proceeding.
> (3) No animal shall be deemed to have been abandoned and forfeited to the governmental animal control agency, law enforcement agency, or their designee until reasonable attempts to determine and notify the owner have been made. If the owner of the animal cannot be located after reasonable efforts or the owner is located and notified but does not post, within ten (10) business days, the court-ordered security plus the costs reasonably incurred by the governmental animal control agency, law enforcement agency, or their designee for housing and caring for the animal since its seizure, the animal shall be deemed to have been abandoned and shall be forfeited to the governmental animal control agency, law enforcement agency, or their designee for disposition in accordance with reasonable practices for the humane treatment of animals.

Tenn. Code Ann. § 39-14-210(g).[10] Based upon this statute, the State asserts that it was required only to make "reasonable efforts" to notify Appellees of the seizure of their horses.

---

[10] The cited version of section 39-14-210(g) was enacted and took effect on July 1, 2013, after the seizure of the horses in this case but prior to the filing of the forfeiture complaint. *See* 2013 Tenn. Laws Pub. Ch. 157 (S.B. 581). Based upon our resolution of this appeal, the change has no substantive effect on the resolution of this appeal.

In our view, section 39-14-210(g) is likewise inapplicable in this case. First, we note that section 39-14-210(g) contemplates forfeiture of animals seized from non-owners only in a single instance—where the owner failed to pay court-ordered security. In this case, there is simply no allegation that Appellees failed to pay court-ordered security. Moreover, this Court has recently held that subsection (g) is not a civil forfeiture statute and that civil courts therefore have no jurisdiction to impose the requirements contained therein. *See* **State v. Tillilie**, No. W2015-00673-COA-R3-CV, 2016 WL 3268728, at *4–5 (Tenn. Ct. App. June 7, 2016) (no perm. app. filed). As this Court explained:

> Unlike the various statutes authorizing the forfeiture of property, the bond and abandonment provisions of section 39-14-210(g)(2) do not incorporate title 40's forfeiture statutes nor do they follow what our supreme court, in **Sprunger**, identified as strict procedural requirements of the forfeiture statutes. **Sprunger**, 485 S.W.3d at 500 ("The State's failure to prove its compliance with the procedural requirements of the forfeiture statutes in this case requires us to vacate the forfeiture.").
>
> Further, unlike civil forfeitures, which are typically post-conviction actions, the security and abandonment provisions at issue in this case are part of the pre-judgment criminal procedure. Section 39-14-210(f) demonstrates that "custody of any animal victimized under this part shall be placed with any governmental animal control agency" in order to "assist the animal and preserve evidence for prosecution." Tenn. Code Ann. § 39-14-210(f). The purpose of security, as authorized by section 39-14-210(g)(1)(B), is to provide for expected expenses in caring for and boarding the victimized animals. Abandonment only occurs when the owner of the animals fails or refuses to provide the security. *See* Tenn. Code Ann. § 39-14-210(g)(2). On the contrary, civil forfeitures do not allow an individual convicted of a covered crime to provide security to prevent having his or her property forfeited.
>
> Simply put, the action described in Tennessee Code Annotated section 39-14-210(g)(2) at issue in this case is not a forfeiture. Rather, section 39-14-210's security and abandonment provisions are part of the criminal procedure pending trial[.]

**Tillilie**, 2016 WL 3268728, at *5. Thus, section 39-14-202 offers no support for the forfeiture of an animal in civil court. Instead, it is simply an element of a pending criminal matter.

Here, the State filed an *in rem* civil forfeiture action after seizing the subject horses in an effort to forfeit Appellees' interests in their property. Because the Appellees were not convicted of a crime under section 39-14-202 and the forfeiture therefore could

not have been imposed by the court exacting the sentence, section 39-14-202(e) is clearly inapplicable. Likewise, because the forfeiture did not involve Appellees' failure to pay court-ordered security and did not take place in a pending criminal matter, section 39-14-202(g) is likewise inapplicable. As such, the State's reliance on section 39-14-202 and -210 for what they assert is a relaxed notice procedure applicable in forfeitures of victimized animals is simply not applicable in this case.

In its appellate brief, the State argues that notwithstanding section 39-14-202(e)'s inapplicability to owners not convicted of animal cruelty, forfeiture of an owner's interest in an animal allegedly abused by a convicted third-party is proper under the animal cruelty statutes, citing *State v. Siliski*, No. M2004-02790-CCA-R3-CO, 2006 WL 1931814 (Tenn. Crim. App. July 10, 2006). In *Siliski*, the defendant was convicted of nine counts of animal cruelty, and over two hundred animals were seized from her care. *Id.* at *1 Third-party owners of the animals appeared in the criminal proceeding for the return of their animals. *Id.* The trial court held an informal hearing and denied the claims. The third parties appealed, arguing that their due process rights had been violated. *Id.*

The *Siliski* Court first noted that in the absence of specific procedures governing forfeiture in the animal abuse statutes, the general rules applicable in forfeiture actions would govern "the procedure to be followed by a third party claiming ownership of a forfeited animal." *Id.* at *3. Rather than rule on the third parties' due process arguments or discuss the procedure applicable, however, the Court of Criminal Appeals held that as a criminal court, it had no jurisdiction over the interests of a third party who was not a criminal defendant. *Id.* at *4 (citing Tenn. Code Ann. § 39-11-705(b) ("Jurisdiction over the interests of a third party who is not a defendant in the criminal prosecution must be exercised in a separate civil forfeiture action."); Tenn. Code Ann. § 39-11-708(d) ("If a third party who is not a defendant in the criminal action has an interest in any of the property described in the criminal forfeiture count of the indictment or information, then the state shall determine the rights of the third party in a separate civil forfeiture action under this chapter.")). Thus, the Court of Criminal Appeals held that the remedy sought could not be pursued in the criminal proceeding. *Id.* at *5.

Based upon the holding in *Siliski*, the State argues that forfeiture of a non-defendant owner's interest in an animal that was the victim of animal cruelty is authorized but must be pursued in a civil action, like the action taken by the State in this case. Respectfully, we cannot agree. Because the *Siliski* Court held that it had no jurisdiction over the matter, it made no ruling that the forfeiture of the non-defendant owners' property was subject to forfeiture under section 39-14-202(e). As previously discussed, the plain language of section 39-14-202(e) simply does not authorize the forfeiture in this case. The State has not directed this Court's attention to any decisions, nor has our research revealed any, holding that a non-defendant's interest in an allegedly victimized animal may be forfeited pursuant to section 39-14-202(e). Indeed, other cases citing this section in support of forfeiture have all involved a criminal defendant's

forfeiture in conjunction with a criminal proceeding. *See* **State v. Siliski**, 238 S.W.3d 338, 359 (Tenn. Crim. App. 2007) (involving forfeiture by the criminal court after the defendant was convicted of nine counts of animal cruelty); **State v. Webb**, 130 S.W.3d 799, 839 (Tenn. Crim. App. 2003) (involving forfeiture by the criminal court after the defendant was convicted of forty-seven counts of animal cruelty). As such, we conclude that any reliance on Tennessee Code Annotated sections 39-14-202 or 39-14-210 is misplaced.

As noted above, however, the State relies not only on sections 39-14-202 or 39-14-210, but also on Tennessee Code Annotated sections 39-11-701, *et seq.* to support the forfeiture of the horses. Specifically, the State asserted in its complaint that it complied with the requirements of section 39-11-707(c) by giving actual notice of the seizure of the horses to Appellees. In contrast, Appellees contend that section 39-11-701, *et seq.* is likewise inapplicable and that, if applicable, the State failed to strictly comply with the notice requirements contained therein. We agree.

We first note that the State in its brief does not suggest which of the types of property subject to seizure in Tennessee Code Annotated section 39-11-703 is applicable in this case. Indeed, section 39-11-703 indicates that personal property is subject to seizure only in specified circumstances, such as when it is "directly or indirectly acquired by or received in violation of any statute or as an inducement to violate any statute, or any property traceable to the proceeds from the violation[,]" Tenn. Code Ann. § 39-11-703(a), or is a type of property specifically mentioned in the statute. *See* Tenn. Code Ann. § 39-11-703(c) (specifying certain types of property and crimes that together authorize forfeiture). The horses in this case, however, were not acquired or received in violation of a statute, nor do they fall within any of the circumstances outlined by subsection (c). The State does not cite, either in its appellate brief or its initial forfeiture complaint, any other statute authorizing the forfeiture in this case. Because the forfeiture statutes must be strictly construed in favor of the property owner and it is the State's burden to establish that the property is subject to forfeiture, *see* **Sprunger**, 458 S.W.3d at 500, we cannot conclude that the forfeiture was authorized by the statutes cited by the State in this case.[11] *See id.* at 494 (quoting **Hays**, 860 S.W.2d 408) (holding that forfeiture is not authorized unless "specifically provided for" by statute).

Even if we were to assume, however, that the horses were subject to forfeiture in this case, the undisputed facts establish that the State failed to strictly comply with the procedural requirements of the general forfeiture statutes. Here, the undisputed facts show that the horses were seized on March 1, 2012. At that time, certain procedural

---

[11] As previously discussed, the seizure and forfeiture of personal property is also governed by Tennessee Code Annotated section 40-33-201; none of the statutes listed in that section authorize the seizure of the horses in this case.

safeguards were triggered. Specifically, Tennessee Code Annotated section 39-11-707(c) provides:

> Upon the seizure of personal property for forfeiture, the seizing agency shall within five (5) working days, apply ex parte for a forfeiture warrant from a judge authorized to issue a search warrant. Upon a finding that probable cause for forfeiture exists, a forfeiture warrant shall issue. The warrant shall be based upon proof by affidavit that there is probable cause that the owner's interest in the seized property is subject to forfeiture. In the event a forfeiture warrant is not issued, then the property shall immediately be returned unless the property is to be retained for evidence in a criminal proceeding. No forfeiture action for personal property may be filed without the issuance of a forfeiture warrant.

Tenn. Code Ann. § 39-11-707(c). Although not cited by the State, we note that the general forfeiture statute applicable to many types of seizure of personal property contains the same requirement. Specifically, Tennessee Code Annotated section 40-33-204(a) provides that: "Once personal property is seized pursuant to an applicable provision of law, no forfeiture action shall proceed unless a forfeiture warrant is issued in accordance with this section by a general sessions, circuit, criminal court or popularly elected city judge." Furthermore "[i]f an arrest was made at the time of the seizure, the officer making the seizure shall apply for a forfeiture warrant by filing a sworn affidavit within five (5) working days following the property seizure." Tenn. Code Ann. § 40-33-204(b)(2). Despite this clear requirement, the record is undisputed that the State did not seek forfeiture warrants regarding the subject horses until approximately July 10, 2013, more than **one year** following the seizure. As such, the State clearly did not comply with the requirement that it seek a forfeiture warrant within five days of the seizure of personal property.

The State suggests in its brief, however, that it was not required to seek a forfeiture warrant until the culmination of the criminal proceedings involving the horse trainers. The State cites no portion of the general forfeiture statutes that would suggest that the timely procurement of a forfeiture warrant is excused while criminal proceedings are ongoing. Rather, the State cites the Tennessee Supreme Court's 1967 Opinion in *Lawrence v. Mullins*, 224 Tenn. 9, 15, 449 S.W.2d 224 (Tenn. 1969). Therein, the Tennessee Supreme Court rejected an argument that stolen funds should have been returned prior to the outcome of a criminal proceeding, stating:

> The Trial Court was correct in reserving his Opinion with respect to the returning of the money to the Respondent in the hearing to suppress evidence in the criminal case. Such property held by the Court for the purpose of developing or proving a criminal charge preferred against the

- 18 -

party from whose custody it was taken should not be turned over to any party until after final disposition of the criminal proceedings.

*Id.* at 226.

Respectfully, the **Lawrence** case is inapposite the analysis in this case. As an initial matter, **Lawrence** was decided approximately thirty years prior to the initial enactment of the general forfeiture statutes at issue in this case. *See* 1998 Tenn. Laws Pub. Ch. 979 (H.B. 1621) (enacting Tennessee Code Annotated section 39-11-701, *et seq.*); 1994 Tennessee Laws Pub. Ch. 925 (S.B. 2693) (enacting Tennessee Code Annotated section 40-33-201, *et seq.*). As such, **Lawrence** offers no authority on the issue of whether compliance with section 39-11-707(c) is excused due to an ongoing criminal proceeding. Moreover, even if we were to apply the holding of **Lawrence** to this case, it would merely denote that the property that was seized as part of a criminal investigation may not actually be returned until the criminal proceedings had finalized. The holding therein would not, however, prevent the State from properly obtaining a forfeiture warrant to justify the seizure and initiate forfeiture proceedings to take place thereafter. Indeed, the requirement that the State obtain a forfeiture warrant prior to the culmination of criminal proceedings does not result in the immediate return of the property to its owner; rather, it authorizes the State to continue to hold the property pursuant to Tennessee law. Compliance with the five-day forfeiture warrant requirement was therefore not excused in this case.

Based on the foregoing, we conclude that the undisputed facts show that the State failed to establish that the horses at issue were "subject to forfeiture" pursuant to Tennessee law or that the State complied with the procedural requirements of the forfeiture statutes.[12] Our supreme court has held that where the State fails to prove its compliance with applicable forfeiture statutes, we are "require[d] [] to vacate the forfeiture." **Sprunger**, 458 S.W.3d at 500. Accordingly, we affirm the decision of the trial court granting summary judgment in favor of Appellees and concluding that forfeiture was not appropriate. The trial court's ruling that the horses should be returned to Appellees is therefore affirmed.

### Requests for Admissions

Appellees finally ask this Court to reverse the trial court's ruling denying their motion for certain requests for admission to be admitted. Based upon our resolution of the issues in this case in favor of Appellees, we conclude that this issue is moot. *See*

---

[12] We note that Appellees assert that the State failed to comply with other procedural requirements applicable to the attempted forfeiture in this case. Because the State has failed to establish that the horses were subject to forfeiture or that it timely sought a forfeiture warrant, we need not address these additional alleged failures.

- 19 -

*McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) ("A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party.").

## Conclusion

The judgment of the Circuit Court of Fayette County is affirmed, and this cause is remanded to the trial court for all further proceedings as are necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, the State of Tennessee, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE